UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMRAN AHMED,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, SARAH B. ROGERS, in her official capacity as Under Secretary of State for Public Diplomacy, PAMELA BONDI, in her official capacity as Attorney General, KRISTI NOEM, in her official capacity as Secretary of Homeland Security, TODD M. LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; JUDITH ALMODOVAR, in her official capacity as Acting Field Office Director of the New York Immigration and Customs Enforcement Office,<br><br>*Defendants*. | Case No. 25 Civ. _____ |

## DECLARATION OF ROBERTA A. KAPLAN

I, Roberta A. Kaplan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a member of the bar of the State of New York and am admitted to appear before this Court. I am a partner in the law firm Kaplan Martin LLP, counsel for Plaintiff Imran Ahmed in the above-captioned action. I am personally familiar with the facts set forth in this Declaration and, if called, could testify competently thereto.

2. Pursuant to Local Civil Rule 6.1(d) of the Local Rules of the United States District Court for the Southern District of New York, I submit this Declaration in support of Plaintiff's Order to Show Cause why a temporary restraining order and preliminary injunction should not be granted.

1

3.      Proceeding by Order to Show Cause is necessary because Mr. Ahmed faces imminent risk of unconstitutional immigration detention based on his protected speech.

4.      On December 23, 2025, U.S. Secretary of State Marco Rubio issued a press release announcing that the State Department "is taking decisive action against five individuals" for their protected speech activities.  The press release further announced that Secretary Rubio had made a determination that the individuals' "entry, presence, or activities in the United States have potentially serious adverse foreign policy consequences for the United States" (the "Rubio Declaration") and noted that, under the Rubio Declaration, the Department of Homeland Security "can initiate removal proceedings against certain individuals pursuant to INA section 237(a)(4)(C), which renders such individuals deportable."  The press release explained that "[t]hese actions are pursuant to Section 212(a)(3)(C) of the Immigration and Nationality Act" (the "Foreign Policy Provision").

5.      That same day, Under Secretary of State Sarah B. Rogers posted on social media: "Today, the United States issued SANCTIONS reinforcing the 'red line' I invoked on @GBNEWS. Namely: extraterritorial censorship of Americans.  Today's sanctions target the censorship-NGO ecosystem."  In a separate post, Under Secretary Rogers continued: WE'VE SANCTIONED: Imran Ahmed, key collaborator with the Biden Administration's effort to weaponize the government against U.S. citizens.  Ahmed's group, Center for Countering Digital Hate (CCDH), created the infamous 'disinformation dozen' report, which called for platforms to deplatform twelve American 'anti-vaxxers', including now-HHS Secretary @SecKennedy."

6.      Also on December 23, 2025, an article was published by Elizabeth Troutman Mitchell at *The Daily Signal*.  The article, which describes a State Department document obtained by *The Daily Signal*, notes that Mr. Ahmed is "subject to deportation."  The article further explains:

"Due to Secretary of State Marco Rubio's foreign policy determination, the Department of Homeland Security can now initiate removal proceedings."

7. This is the not the first case in which the Trump Administration has used the Foreign Policy Provision to target noncitizens for their protected speech. In cases involving Rümeysa Özturk, Mahmoud Khalil, and Badar Khan Suri, the government arrested the individuals in their home jurisdictions based on expressive activity and then promptly transferred them to distant detention facilities outside the arresting district, often before judicial review or service of charging documents.

8. I am aware that in a similar case, the Department of Homeland Security appears to have sought to circumvent attempts by an individual to prevent his unlawful detention through temporary restraining order. See Opp'n to Mot. for Preliminary Injunction and Temporary Restraining Order, *Taal v. Trump*, No. 25-cv-0335 (N.D.N.Y. Mar. 22, 2025), ECF No. 38.

9. The federal government has taken the position in other litigation that where it invokes the Foreign Policy Provision as a basis for deportation, a noncitizen is not permitted to seek review of his custody determination before an immigration judge. See Opp'n to Mot. for Release under *Lucas v. Haaden* and *Mapp v. Reno*, *Khalil v. Trump*, No. 25 Civ. 1963 (D.N.J. Mar. 23, 2025), ECF 99, n.5. It stands to reason that the government would adopt the same position in Mr. Ahmed's case if he were detained, all but barring him from a meaningful ability to administratively seek release, and making the relief sought herein all the more critical.

10. In light of the Department of Homeland Security's clear intent to arrest and detain Plaintiff based on his protected speech and the other information detailed above, Mr. Ahmed faces imminent risk of harm.

11.     Shortly after the filing of this declaration, on December 24, 2025, counsel for Plaintiff emailed Jeffrey Oestericher, Chief of the Civil Division at the U.S. Attorney's Office for the Southern District of New York with a courtesy copy of the Complaint filed on December 24, 2025, and copies of all the documents supporting Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

12.     No previous application for similar relief has been made in this court or any other.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York  
December 24, 2025

*/s/ Roberta A. Kaplan*  
Roberta A. Kaplan