**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IMRAN AHMED,

              Plaintiff,

              -v-

MARCO RUBIO, *et al.*,

              Defendants.

No. 25 Civ. 10705 (LAP)

**COMBINED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741/2689
Email:  dana.walsh.kumar@usdoj.gov
        danielle.marryshow@usdoj.gov

DANA WALSH KUMAR
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ............................................................................................................2

    I.     Removal Proceedings and Judicial Oversight...............................................2

    II.    This Action..................................................................................................3

LEGAL STANDARDS ....................................................................................................5

    I.     Legal Standards Governing Motion to Dismiss...........................................5

    II.    Legal Standard Governing Preliminary Injunctions ...................................6

ARGUMENT ...............................................................................................................7

    I.     The Court Should Dismiss This Action.......................................................7

        A.  Venue is Improper in this Action..................................................7

        B.  This Court Lacks Jurisdiction under the INA and REAL ID Act...............12

            1.  8 U.S.C. § 1252(g) Bars Judicial Review of the Decision Whether to Commence Removal Proceedings Against Plaintiff...............................12

            2.  8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Plaintiff's Challenges to the Courts of Appeals ...........................17

        C.  Plaintiff's Amended Complaint Suffers from Other Defects .......................22

    II.    The Court Should Deny Plaintiff's Motion For A Preliminary Injunction ...............24

        A.  Likelihood of Success on the Merits..........................................24

        B.  Irreparable Harm.....................................................................25

        C.  Balance of the Equities and Public Interest ..............................26

        D.  The Court Should Require Bond.................................................26

CONCLUSION.............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abalu v. Soc'y of Hum. Res. Mgmt., Jennifer McCollum*,
No. 24-CV-5917 (LJL), 2025 WL 1019199 (S.D.N.Y. Apr. 4, 2025) ...................................... 9

*Accardi v. Shaughnessy*,
347 U.S. 260 (March 15, 1954) ............................................................................................ 20

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ........................................................................................ 19, 22, 26

*Ajlani v. Chertoff*,
545 F.3d 229 (2d Cir. 2008)............................................................................................ 15, 19

*Ali v. Barr*,
464 F. Supp. 3d 549 (S.D.N.Y. 2020).................................................................................... 20

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) ............................................................................................ 14

*Baker v. Carr*,
369 U.S. 186 (1962).......................................................................................................... 22, 23

*Blacher v. Ridge*,
436 F. Supp. 2d 602 (S.D.N.Y. 2006)................................................................................... 8, 9

*Blakely v. Lew*,
607 F. App'x 15 (2d Cir. 2015) ............................................................................................ 11

*Brenntag Int'l Chem., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999).................................................................................................. 25

*Calcano-Martinez v. INS*,
232 F.3d 328 (2d Cir. 2000).................................................................................................. 18

*Caremark Therapeutic Servs. v. Leavitt*,
405 F. Supp. 2d 454 (S.D.N.Y. 2005)..................................................................................... 7

*CFTC v. Wilson*,
27 F. Supp. 3d 517 (S.D.N.Y. 2014)....................................................................................... 5

*Che v. Edlow*,
No. 24 Civ. 2793 (MKV), 2025 WL 2695283 (S.D.N.Y. Sept. 22, 2025)........................... 7, 9

*Clark v. Martinez*,
  543 U.S. 371 (2005).................................................................................................. 13

*Cooper Butt ex rel. Q.T.R. v. Barr*,
  954 F.3d 901 (6th Cir. 2020) ................................................................................... 16

*Delgado v. Quarantillo*,
  643 F.3d 52 (2d Cir. 2011)................................................................................. 19, 22

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ................................................................................... 27

*E.F.L. v. Prim*,
  986 F.3d 959 (7th Cir. 2021) ................................................................................... 13

*Elgharib v. Napolitano*,
  600 F.3d 597 (6th Cir. 2010) ................................................................................... 15

*El-Shifa Pharmaceutical Indus. Co. v. United States*,
  607 F.3d 836 (D.C. Cir. 2010) ................................................................................. 23

*Feng Chen obo Jiang Jinghon v. Sessions*,
  321 F. Supp. 3d 332 (E.D.N.Y. 2018) ..................................................................... 10

*Filsoof v. Wheelock St. Cap., LLC*,
  No. 22 Civ. 9359 (NRB), 2023 WL 8280496 (S.D.N.Y. Nov. 30, 2023) ................. 9

*Giammatteo v. Newton*,
  452 F. App'x. 24 (2d Cir. 2011) ................................................................................ 6

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007)........................................................................................ 6

*Gross v. German Foundation Indus. Initiative*,
  456 F.3d 363 (3d Cir. 2006)..................................................................................... 24

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005)............................................................................... 5, 6, 7

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952).................................................................................................. 24

*Humphries v. Various Fed. U.S. INS Emps.*,
  164 F.3d 936 (5th Cir. 1999) ................................................................................... 16

*Hussain v. Gonzales*,
    492 F. Supp. 2d 1024 (E.D. Wisc. 2007) ........................................................................ 25

*INS v. St. Cyr*,
    533 U.S. 289 (2001) ....................................................................................................... 2

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................................................. 18, 19

*Jean-Louis v. ACS*,
    No. 22 Civ. 8457 (LJL), 2022 WL 16857359 (S.D.N.Y. Oct. 14, 2022) ...................... 11

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ..................................................................................................... 19

*Jiang Jinghon v. Sessions*,
    321 F. Supp. 3d 332 (E.D.N.Y. 2018) ......................................................................... 10

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) ....................................................................................... 13

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) ........................................................................................ 6

*Khalil v. President*,
    164 F.4th 259 (3d Cir. 2026) ................................................................................. 20, 21

*Kumar v. Holder*,
    No. 12 Civ. 5261 (SJF), 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ...................... 16

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ..................................................................................... 24

*Luctama v. Knickerbocker*,
    No. 19 Civ. 8717 (VB), 2020 WL 1503563 (S.D.N.Y. Mar. 30, 2020) ...................... 11

*Mahdawi v. Trump*,
    136 F.4th 443 (2d Cir. 2025) ....................................................................................... 21

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .......................................................................................... 6

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ....................................................................................................... 23

*Moody v. Broadview Fed. Credit Union*,
  No. 26 Civ. 282 (LTS), 2026 WL 279660 (S.D.N.Y. Feb. 12, 2026) ...................................... 11

*Nixon v. United States*,
  506 U.S. 224 (1993) ................................................................................................................ 22

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................................ 26

*Obado v. Superior Ct. of New Jersey Middlesex Cnty.*,
  No. 21 Civ. 10420 (FLW), 2022 WL 283133 (D.N.J. Jan. 31, 2022) .................................... 14

*Person v. Google Inc.*,
  456 F. Supp. 2d 488 (S.D.N.Y. 2006) ................................................................................... 5, 7

*P.L.  v. ICE*,
  No. 19 Civ 1336 (ALC), 2019 WL 2568648 (S.D.N.Y. June 21, 2019) ................................ 20

*Qiao v. Lynch*,
  672 F. App'x 134 (2d Cir. 2017) ............................................................................................ 20

*Rauda v. Jennings*,
  55 F.4th 773 (9th Cir. 2022) ................................................................................................... 13

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) .......................................................................................................... passim

*Rosario v. Holder*,
  627 F.3d 58 (2d Cir. 2010) ...................................................................................................... 19

*Ruiz v. Mukasey*,
  552 F.3d 269 (2d Cir. 2009) .................................................................................................... 18

*Saadulloev v. Garland*,
  No. 23 Civ. 106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ............................................ 14

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ................................................................................................ 23

*Selvarajah v. U.S. Dep't of Homeland Security*,
  No. 10 Civ. 4580 (JGK), 2010 WL 4861347 (S.D.N.Y. Nov. 30, 2010) ............................... 20

*Sierra v. United States*,
  No. 97 CIV. 9329 (RWS), 1998 WL 599715 (S.D.N.Y. Sept. 10, 1998) ............................... 10

*Sissoko v. Rocha,*
    509 F.3d 947 (9th Cir. 2007) ................................................................. 14

*State of California v. United States,*
    104 F.3d 1086 (9th Cir. 1997) ............................................................... 23

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point,*
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) ..................................................... 6

*Taal v. Trump,*
    No. 25 Civ. 335 (ECC), 2025 WL 926207 (N.D.N.Y. Mar. 27, 2025) ................... 20

*Tazu v. Att'y Gen. United States,*
    975 F.3d 292 (3d Cir. 2020) ........................................................ 13, 14, 15

*United States v. Curtiss-Wright Exp. Corp.,*
    299 U.S. 304, 320 (1936) ...................................................................... 23

*United States v. Gonzalez-Roque,*
    301 F.3d 39 (2d Cir. 2002) ...................................................................... 2

*United States v. Martinez-Fuerte,*
    428 U.S. 543 (1976) .............................................................................. 26

*Valine v. Trump,*
    No. 25 Civ. 8317 (LTS), 2025 WL 3274546 (S.D.N.Y. Oct. 10, 2025) ................ 8

*Vargas v. U.S. Dep't of Homeland Sec.,*
    No. 17 Civ. 356, 2017 WL 962420 (W.D. La. Mar. 10, 2017) ......................... 16

*We The Patriots USA, Inc. v. Hochul,*
    17 F.4th 266 (2d Cir. 2021) .................................................................... 6

*Whiteman v. Dorotheum GmbH,*
    431 F.3d 57 (2d Cir. 2005) ..................................................................... 23

*Winter v. Nat. Res. Def. Council,* Inc.,
    555 U.S. 7 (2008) .............................................................................. 6, 25

*Xiao Ji Chen v. U.S. Dep't of Justice,*
    434 F.3d 144 (2d Cir. 2006) ................................................................ 3, 18

*Zivtofsky v. Clinton,*
    566 U.S. 189 (2012) ......................................................................... 22, 23

*Zundel v. Gonzales*,
   230 F. App'x 468 (6th Cir. 2007) ............................................................ 16

**Regulations**

8 C.F.R. § 1003.1 .......................................................................................... 2

8 C.F.R. § 1003.19(f) .................................................................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 1, 6

Fed. R. Civ. P. 12(b)(3) ......................................................................... 1, 5, 7

Fed. R. Civ. P. 65(c) ................................................................................... 26

**Statutes**

5 U.S.C. § 701(a)(1) .................................................................................... 22

5 U.S.C. § 704 ............................................................................................. 22

8 U.S.C. § 1101 ............................................................................................. 2

8 U.S.C. § 1227(a)(4) ........................................................................... passim

8 U.S.C. § 1229 ....................................................................................... 2, 17

8 U.S.C. § 1252 ..................................................................................... passim

28 U.S.C. § 1331 ......................................................................................... 18

28 U.S.C. § 2241 ......................................................................................... 25

28 U.S.C. § 1391(e)(1) ......................................................................... passim

Defendants, by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this combined memorandum of law in support of their motion to dismiss the Amended Complaint, Dkt. No. 43 ("AC"), or alternatively transfer the action, pursuant to Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure, and in opposition to Plaintiff's motion for a preliminary injunction, Dkt. No. 8.

## PRELIMINARY STATEMENT

Through this action, Plaintiff Imran Ahmed ("Plaintiff") seeks to challenge a determination made by the Secretary of State that Plaintiff is a removable alien under Immigration and Nationality Act ("INA") § 237(a)(4)(C)(i), 8 U.S.C. § 1227(a)(4)(C)(i). But Plaintiff cannot bring such a challenge here because venue is improper in this district and this Court lacks subject-matter jurisdiction. All of the relevant conduct at issue has taken place in Washington, D.C., and not in the Southern District of New York. Plaintiff, who lives in Washington, D.C., attempts to establish venue here because he happens to be in New York sometimes and by naming one official located in New York. This is plainly insufficient to establish venue, and the case should be dismissed on that basis alone, or otherwise transferred to the U.S. District Court for the District of Columbia. In addition, this action must be dismissed because the Court lacks jurisdiction. Congress has unambiguously stripped federal district courts of jurisdiction over challenges to the commencement of removal proceedings and has relatedly directed that all challenges to removal proceedings may be heard only upon the conclusion of removal proceedings and in the appropriate court of appeals through a petition for review. Here, Plaintiff's claims are, at bottom, a challenge to removal proceedings, over which this Court lacks jurisdiction. Accordingly, the Court should either transfer this action or dismiss it and deny Plaintiff's motion for a preliminary injunction.

## BACKGROUND

### I.    Removal Proceedings and Judicial Oversight

Under the INA, 8 U.S.C. § 1101 *et seq.*, removal proceedings generally provide the exclusive means for determining whether an alien is both removable from the United States and eligible for any relief or protection from removal.  *See* 8 U.S.C. § 1229a.  Section 1229, which is entitled "[i]nitiation of removal proceedings," explains that an alien must be given written notice of the initiation of removal proceedings though a Charging document called a "Notice to Appear." 8 U.S.C. § 1229.  To commence removal proceedings, the U.S. Department of Homeland Security ("DHS") files the Notice to Appear, the charging document, with the immigration court.

Removal proceedings are conducted before an immigration judge.  *Id.* § 1229a(a)(1).  "At the conclusion of [a removal] proceeding the immigration judge shall decide whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A). An immigration judge, however, does not have the last word in an alien's immigration proceedings.  An alien can (and must, to preserve a claim) appeal an immigration judge's decisions to the Board of Immigration Appeals ("BIA"). *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47-48 (2d Cir. 2002); 8 C.F.R. § 1003.1 (setting out the organization, jurisdiction, and powers of the BIA).  An alien's order of removal does not become final until the BIA affirms such an order, or the time permitted the alien to appeal to the BIA runs.  8 U.S.C. § 1101(a)(47)(B).

An alien may seek judicial review of the BIA's decision by filing a petition for review in the appropriate court of appeals.  Congress has repeatedly legislated to ensure that a court of appeals is the exclusive Article III forum for an alien to challenge his immigration proceedings. Specifically, in 1996, Congress "comprehensive[ly]" amended the INA through passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  *INS v. St. Cyr*, 533

U.S. 289, 292 (2001).  Among other reforms, IIRIRA eliminated district court jurisdiction to oversee the removal of aliens and provided that the courts of appeals oversee the immigration system exclusively through petitions for review.  *See* 8 U.S.C. § 1252 (codifying IIRIRA's judicial review provisions, including later revisions discussed *infra*).  Following the Supreme Court's ruling in *St. Cyr*, Congress again amended the INA through the REAL ID Act of 2005.  *Xiao Ji Chen v. U.S. DOJ*, 471 F.3d 315, 326 (2d Cir. 2006).  The REAL ID Act repeatedly inserted language into the relevant provisions of 8 U.S.C. § 1252, clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, whether "statutory or nonstatutory." REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231 (2005) (quoted language codified at 8 U.S.C. § 1252(a)(2)(A), (B), (C), (a)(4), (a)(5), (b)(9)).  Thus, Congress has repeatedly legislated to design, implement, and refine a three-tier administrative and judicial system—namely, the immigration court, the BIA, and the court of appeals—to determine if and when an alien is removable from the United States.  Congress expressly excluded the district courts from playing a role in this review process.

## II.    This Action

Plaintiff, a native and citizen of the United Kingdom, was admitted to the United States on an O-1 visa in January 2021.  *See* AC ¶ 21.  He adjusted to lawful permanent resident status in March 2024.  *Id.*  Plaintiff "founded and runs, the Center for Countering Digital Hate ("CCDH"), which studies the content moderation policies of major social media companies."  *Id.* ¶ 1.

On December 5, 2025, the European Commission fined X Corp. €120 million for alleged violations of the Digital Services Act.  *See* Dkt. No. 42 ("AR") at DOS_002.  In the State Department's view, "[t]he EU's action against X Corp. . . . reflects a broader political struggle over information control and the influence of U.S. technology platforms in Europe."  *Id.* at DOS_003.  On December 19, 2025, Secretary of State Marco Rubio approved a range of actions

in response. *See id.* at DOS_001-002.  As one of those approved responses, Secretary Rubio personally determined that Plaintiff's presence and activities in the United States would have potentially serious adverse foreign policy consequence and would compromise a compelling U.S. foreign policy interest, rendering him deportable under INA § 237(a)(4)(C)(i), 8 U.S.C. § 1227(a)(4)(C)(i).  *See id.* at DOS_007; *see also* 8 U.S.C. § 1227(a)(4)(C) ("An alien whose presence or activities in the United States the Secretary of State has reasonable ground[s] to believe would have potentially serious adverse foreign policy consequence for the United States is deportable.").  He explained that Plaintiff's activities with CCDH harmed the United States' efforts to protect freedom of expression for American citizens and guard against foreign encroachment upon American sovereignty.  *See id.* DOS_007-008.  Based on that determination, Plaintiff is removable from the United States under 8 U.S.C. § 1227(a)(4)(C)(i).  *Id.* at DOS_007.

On December 24, 2025, Plaintiff filed this action.  *See* Dkt. No. 1.  Plaintiff amended his complaint on February 12, 2026, and seeks to effectively enjoin the Government from commencing removal proceedings against him.  He brings four claims: (1) a First Amendment claim challenging the constitutionality of the "Foreign Policy Ground" of 8 U.S.C. § 1227(a)(4)(C), as well as the "Rubio Declaration, the Rogers' Post [announcing the determination], and the targeting of [Plaintiff]," AC ¶¶ 95-105; (2) a Fifth Amendment claim challenging the constitutionality of the "Foreign Policy Ground" of 8 U.S.C. § 1227(a)(4)(C), as well as the "administration's past practices, the Rubio Declaration, and the Rogers' Post," *id.* ¶¶ 106-115; (3) an Administrative Procedure Act ("APA") claim, *id.* ¶¶ 116-118; and (4) a non-delegation doctrine claim, *id.* ¶¶ 119-122.  As relief, Plaintiff seeks, *inter alia*, that this Court: (i) "[v]acate and set aside the Announcement of Actions to Combat the Global Censorship-Industrial Complex"; (ii) "[v]acate and set aside Defendants' [alleged] unlawful policy of targeting

noncitizens for removal based on First Amendment protected speech"; and (iii) "[d]eclare that Defendants' actions to arrest, detain, or transfer [Plaintiff] violate the First Amendment, the Due Process Clause of the Fifth Amendment, the INA, the APA, the *Accardi* doctrine, and the non-delegation doctrine." *Id.* at 42-43 (Prayer for Relief).

Contemporaneously with the filing of this lawsuit, Plaintiff filed a temporary restraining order ("TRO") and preliminary injunction to enjoin the government from detaining him during the pendency of this action. *See* Dkt. No. 8. On December 25, 2025, the Court issued a TRO temporarily enjoining U.S. Immigration and Customs Enforcement ("ICE") from detaining Plaintiff until the Court decides Plaintiff's preliminary injunction motion. *See* Dkt. No. 14.

## LEGAL STANDARDS

### I.    Legal Standards Governing Motion to Dismiss

On a motion to dismiss for improper venue under Rule 12(b)(3), "the Plaintiff has the burden of pleading venue." *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006). "The Court accepts facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff['s] favor." *CFTC v. Wilson*, 27 F. Supp. 3d 517, 536 (S.D.N.Y. 2014) (alterations and quotation marks omitted). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. But if the court holds an evidentiary hearing[,] the plaintiff must demonstrate venue by a preponderance of the evidence." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alterations omitted).

Venue is appropriate for a claim against a United States agency, officer, or employee only in a judicial district where:

> (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  The Second Circuit has directed that district courts "take seriously the adjective 'substantial'" in construing the second prong of the test, and explained that "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis in original)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011).

## II.    Legal Standard Governing Preliminary Injunctions

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008).  "When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge."  *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

## ARGUMENT

## I.    THE COURT SHOULD DISMISS THIS ACTION

This case should be dismissed—or otherwise transferred—because venue is not proper in this district and the Court lacks subject matter jurisdiction over the claims asserted.

### A.  Venue is Improper in this Action

This case should be dismissed pursuant to Rule 12(b)(3) because venue is improper in this district, or otherwise transferred to the U.S. District Court for the District of Columbia.  All of the actions relevant to the claims have taken place in Washington, D.C., and none of the relevant allegations have any connection to this district.  To establish venue, "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Gulf Ins. Co.*, 417 F.3d at 357.  Indeed, "[the Second Circuit has made clear that district courts must construe the venue statute strictly, and cautioned that courts should take seriously the adjective substantial." *Che v. Edlow*, No. 24 Civ. 2793 (MKV), 2025 WL 2695283, at *3 (S.D.N.Y. Sept. 22, 2025) (internal quotation marks omitted).  Plaintiff bears the burden of establishing venue. *Person*, 456 F. Supp. at 493.  Plaintiff has not met that burden.

Plaintiff has failed to establish that venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to the claims has not occurred in this district. To the contrary, all significant events giving rise to the claims occurred in Washington, D.C. Plaintiff is challenging the foreign-policy removal determination made by Secretary Rubio as unconstitutional.  AC ¶¶ 5, 42.  These determinations were made by Government officials, particularly the Secretary of State and Under-Secretary of State, whose residence for venue purposes is Washington, D.C., *see Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 464 (S.D.N.Y. 2005), and there is *no* alleged connection between those individuals and this district, *see* AC ¶¶ 39-94.  Plaintiff cites numerous examples of press releases, *id.* ¶¶ 42, 59, and social

media postings, *id.* ¶¶ 43, 44, 47-48, 58, regarding the Government's allegedly unlawful actions towards him, yet none of these posts or allegations have any connection to this district. Moreover, Plaintiff acknowledges that he resides in Washington, D.C. with his spouse and child, yet another significant connection to Washington.[1] AC ¶¶ 8, 17. Because all material events related to the claims have occurred outside this district, Plaintiff has not, and cannot, establish venue here pursuant to § 1391(e)(1)(B). *See Blacher v. Ridge*, 436 F. Supp. 2d 602, 608 (S.D.N.Y. 2006) ("[T]his district is not the proper venue because neither the plaintiff nor the defendants reside in this district, and none of the complained of activity occurred in this district."); *see also Valine v. Trump*, No. 25 Civ. 8317 (LTS), 2025 WL 3274546, at *1 (S.D.N.Y. Oct. 10, 2025) ("Although Plaintiff claims that New York could be affected by Defendants' alleged conduct, he does not state any facts suggesting that the conduct he challenges transpired in New York.").

Plaintiff attempts to overcome the fact that all of the alleged activity related to the claims occurred in Washington by asserting the following: (i) Plaintiff was "physically present" in New York City on the date the case was commenced and the date that the amended complaint was filed, AC ¶¶ 8, 17; (ii) the New York ICE field office might attempt to detain Plaintiff while he is visiting New York, *id.* ¶¶ 7, 8, 16, 19; 20; (iii) Plaintiff's lawyers are located in New York, *id.* ¶¶ 17, 18, 19; and (iv) Plaintiff visits New York "frequently," *id.* ¶ 17. None of these allegations plausibly establish venue. Plaintiff's "physical presence" in "New York City"[2] at the time the complaint

---

[1] Plaintiff's residence in Washington, D.C. also means that venue cannot be proper under 28 U.S.C. § 1391(e)(1)(C) because Plaintiff admittedly does not reside in this district.

[2] Plaintiff alleges that he was in New York City at the time the complaint and amended complaint were filed, Compl. ¶¶ 8, 17, but not that he was in the Southern District of New York. He similarly alleges that he goes to "New York" for business, *id.* ¶ 17, but does not allege that his business is in the Southern District. So even if Plaintiff's passing sojourns in New York were relevant, they

and amended complaint were filed is of no consequence.  Being temporarily present in the district (for unknown reasons) when the lawsuit was filed, or traveling there for unrelated business reasons, does not suffice to show that significant events material to the claims occurred in the district.  *See* 28 U.S.C. § 1391(e)(1)(B); *Abalu*, 2025 WL 1019199, at *13 ("[A]llegations that [defendant] generally has members in New York and conducts events in New York . . . do not support venue.").  A plaintiff cannot create venue in a district simply by going there occasionally either for court filings or unrelated business matters.

Nor do Plaintiff's speculative allegations that the New York ICE Field Office might detain him establish venue.  Apart from speculation that Plaintiff might be detained in this district, there are no allegations of any ICE conduct related to the claims or the Secretary's challenged determination.  Such speculation does not establish venue.  *See Filsoof v. Wheelock St. Cap., LLC*, No. 22 Civ. 9359 (NRB), 2023 WL 8280496, at *4 (S.D.N.Y. Nov. 30, 2023) ("purely speculative" assertions "cannot be the basis for establishing proper venue"); *Blacher*, 436 F. Supp. 2d at 608 (no venue where no "government official in this District is alleged to be part of that controversy").  Moreover, according to ICE, the New York City Field Office for ICE's Enforcement and Removal Operations ("ERO") "has not been involved in the Department of State's deliberations and determination to sanction [Plaintiff] and/or his organization."  Declaration of William P. Joyce, dated March 13, 2026 ("Joyce Decl."), ¶ 6.  Further, at this time "ERO NYC has no past or current planned enforcement action against [Plaintiff]" because Plaintiff "resides in Washington, D.C.,

_____

are "nonetheless insufficient to support venue in this district because they merely point to New York generally."  *Che*, 2025 WL 2695283, at *4; *see also Abalu v. Soc'y of Hum. Res. Mgmt., Jennifer McCollum*, No. 24-CV-5917 (LJL), 2025 WL 1019199, at *14 (S.D.N.Y. Apr. 4, 2025) ("Some of Plaintiff's allegations are additionally insufficient because stating that an event occurred in 'New York' does not clarify that it occurred in this District.").

and not in the ERO NYC's area of responsibility." *Id.* ¶ 7. Plaintiff's speculation that he might be detained in this district is thus contrary to the evidence.

Nor is the location of Plaintiff's attorneys in this district sufficient to establish venue. The location of counsel is irrelevant to the venue analysis. *See Feng Chen on behalf of Jiang Jinghon v. Sessions*, 321 F. Supp. 3d 332, 336 (E.D.N.Y. 2018) ("Because neither the defendants nor the plaintiffs reside there, the attorney's office location cannot support venue in this district unless a substantial part of the events or omissions giving rise to this claim occurred there."). Plaintiff thus has not established that any relevant events have occurred in this district.

Second, Plaintiff cannot establish venue pursuant to 28 U.S.C. § 1391(e)(1)(A) by simply naming Judith Almodovar, New York's ICE Field Office Director, as a defendant. AC ¶¶ 14, 16, 20. Although named as a defendant, the Amended Complaint contains no allegations whatsoever about any conduct undertaken by Director Almodovar or of any ICE personnel in this district. The Complaint lists Director Almodovar's name just twice, by stating that venue is proper because of "actions taken by Director Almodovar who resides in this district," AC ¶ 16, and listing Director Almodovar as a defendant, *id.* ¶ 14. The Amended Complaint does not include any "actions" taken by Director Almodovar or ICE that are relevant to the claims, except by speculating that because Plaintiff happened to be in New York City, then ICE might detain him here. *Cf. Sierra v. United States*, No. 97 CIV. 9329 (RWS), 1998 WL 599715, at *7 (S.D.N.Y. Sept. 10, 1998) ("It is well-settled that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."). This is plainly insufficient to establish venue, and contrary to the evidence showing that ICE's New York Field Office was not involved in the determination with respect to Plaintiff and has no planned enforcement actions against

Plaintiff.  Joyce Decl. ¶¶ 6-7; *see Moody v. Broadview Fed. Credit Union*, No. 26 Civ. 282 (LTS), 2026 WL 279660, at *1 (S.D.N.Y. Feb. 12, 2026) ("[V]ague and conclusory assertions, without any supporting facts, are insufficient to demonstrate that venue is proper in this district.").  Indeed, accepting Plaintiff's premise for venue would mean that any plaintiff could establish venue in any district where a plaintiff decided to go and some governmental conduct could potentially be directed at him or her.

When venue is improper, the Court may exercise its discretion either to dismiss or transfer the case to a district where venue would be proper. *See Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (the "decision whether to dismiss or transfer a case 'lies within the sound discretion of the district court'").  Given the lack of subject-matter jurisdiction over the claims asserted, *see infra*, any transfer would arguably be futile and therefore dismissal is proper.  *See, e.g.*, *Luctama v. Knickerbocker*, No. 19 Civ. 8717 (VB), 2020 WL 1503563, at *5 (S.D.N.Y. Mar. 30, 2020) (dismissing instead of transferring procedurally defective case because transferring it would only "'raise false hopes and waste judicial resources'").  Nonetheless, if the Court were inclined to transfer the case, Washington, D.C., would be the appropriate venue.  The factors to consider in determining whether transfer is appropriate are:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.

*Jean-Louis v. ACS*, No. 22 Civ. 8457 (LJL), 2022 WL 16857359, at *2 (S.D.N.Y. Oct. 14, 2022).  Here, apart from slight weight accorded to Plaintiff's choice of forum, all other factors weigh in favor of transfer to Washington, D.C., which, as discussed above, is where the relevant decision-

makers are located, where any relevant documents might be located, and even where the Plaintiff himself resides.

### B. This Court Lacks Jurisdiction under the INA and REAL ID Act

Separately, the Court lacks subject-matter jurisdiction over Plaintiff's claims.  Plaintiff brings this lawsuit seeking to vacate the Secretary's decision to charge him with removability, and prevent his detention pending any potential removal proceedings. The jurisdiction stripping provisions of 8 U.S.C. § 1252 deprive this Court of jurisdiction over Plaintiff's claims, which are all, at bottom, challenges to his removal.  Specifically, Plaintiff's claims are barred by 8 U.S.C. § 1252(g), which deprives this Court of jurisdiction to review claims arising from the decision or action to "commence proceedings," and 8 U.S.C. §§ 1252(a)(5) and (b)(9), which deprive this Court of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States, and channel such challenges to the courts of appeals.

### 1.    8 U.S.C. § 1252(g) Bars Judicial Review of the Decision Whether to Commence Removal Proceedings Against Plaintiff

By its plain terms, 8 U.S.C. § 1252(g) eliminates district court jurisdiction over challenges to commencing removal proceedings.  Plaintiff seeks to challenge the government's decisions to charge him with removability, which arise "from the decision [and] action" to "commence proceedings."  8 U.S.C. § 1252(g).  Regardless of the framing of his claims, this Court does not have jurisdiction over such challenges.

Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary of Homeland Security] to [1] *commence proceedings*, [2] adjudicate cases,

or [3] execute removal orders against any alien under this chapter."[3] *Id.* (emphasis added).  Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) . . . ."  Though this section "does not sweep broadly," *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021).  Except as provided in § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions."  *Id.*

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion."  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) ("*AADC*").  Section 1252(g) was designed to protect the Executive's discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings."  *Id.* at 487; *see, e.g.*, *Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review.").  Indeed, Section 1252(g)'s language protects the government's authority to make "discretionary determinations" over whether and when to commence removal proceedings against an alien, "providing that if they are reviewable at all, they at least will not be made the bass for separate rounds of judicial intervention outside the streamlined process that Congress has designed."  *AADC*, 525 U.S. at 485.

Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about *whether* and *when* to commence removal proceedings.  *See, e.g.*, *Jimenez-Angeles v.*

---

[3] The Attorney General once exercised all of that authority, but much of that authority has been transferred to the Secretary of Homeland Security.  *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).  Many of the INA's references to the Attorney General are now understood to refer to the Secretary of Homeland Security.  *Id.*

*Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."); *see also, e.g.*, *Sissoko v. Rocha*, 509 F.3d 947, 950-51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings."); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.*, No. 21 Civ. 10420 (FLW), 2022 WL 283133, at *3 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his immigration proceedings.").

The scope of § 1252(g) also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings. *See, e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take him into custody and detain him during removal proceedings"); *Saadulloev v. Garland*, No. 23 Civ. 106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest [petitioner], clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g).").  Plaintiff alleges that he was wrongfully charged with removability and seeks to prevent his detention pending any forthcoming removal proceedings. *See* AC ¶¶ 85-91, Prayer for Relief.  But the act of arresting an alien to serve a charging document and initiate removal proceedings is an "action . . . to commence proceedings" that this Court lacks jurisdiction to review.  *See, e.g.*, *id.*; *Tazu*, 975 F.3d at 298-99 ("Tazu also challenges the Government's re-detaining him for prompt removal . . . . While this claim does not challenge the

14

Attorney General's *decision* to execute his removal order, it does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it.").

As Section 1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of removal proceedings, this provision applies to constitutional as well as statutory claims. *See, e.g.*, *Tazu*, 975 F.3d at 296-98 (holding that any constitutional claims must be brought in a petition for review, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602-04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding support for the court's interpretation from the remainder of the statute). Indeed, the Second Circuit explained, "[w]hile the statute creates an exception for 'constitutional claim or questions of law,' jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies." *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (citations omitted); *see also id.* ("Accordingly, the district court lacked jurisdiction to review Ajlani's constitutional challenges to his removal proceedings, and it would be premature for this court to do so now."); 8 U.S.C. § 1252(a)(2)(D).

Moreover, the Supreme Court held that a prior version of § 1252(g) barred claims similar to those brought here. *See AADC*, 525 U.S. at 487-92. In *AADC*, the respondents had alleged that the "INS was selectively enforcing the immigration laws against them in violation of their First and Fifth Amendment rights." *Id.* at 473-74. The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. The respondents argued to the Supreme Court that a lack of immediate review would have a "chilling effect" on their First Amendment rights. *Id.* at 488. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to

15

'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487; *see also Cooper Butt ex rel. Q.T.R. v. Barr*, 954 F.3d 901, 908-09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed 'based upon ethnic, religious and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment").

Plaintiff alleges that the government seeks to arrest and commence removal proceedings against him in retaliation for his exercise of his First Amendment rights. *See* AC ¶ 92 ("The prospect of imminent detention, and the commencement of deportation proceedings, has chilled his liberty, free speech, and continued advocacy with CCDH."). But that does not change the analysis; his claims remain squarely within Section 1252(g)'s reach. *See, e.g.*, *AADC*, 525 U.S. at 487-92 (holding that Section 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' . . . [and] is insulated from judicial review"); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (ruling that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. U.S. Dep't of Homeland Sec.*, No. 17 Civ. 356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media . . . [is] barred by 8 U.S.C. § 1252(g)"); *Kumar v. Holder*, No. 12 Civ. 5261 (SJF), 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (claim of initiation of proceedings in a retaliatory manner "falls squarely within Section 1252(g) . . . [and] [t]he pending immigration proceedings are the appropriate forum

for addressing petitioner's retaliation claim in the first instance."). As such, judicial review of Plaintiff's claims that the commencement of removal proceedings against him is unconstitutional is barred by Section 1252(g).

### 2. 8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Plaintiff's Challenges to the Courts of Appeals

Under the INA, removal proceedings generally provide the exclusive means for determining whether an alien is both removable from the United States and eligible for any relief or protection from removal. *See* 8 U.S.C. § 1229a. In 8 U.S.C. § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the courts of appeals. *See AADC*, 525 U.S. at 483. District courts play no role in that process. Consequently, this Court lacks jurisdiction over Plaintiff's claims, which are all, at bottom, challenges to his removal. Plaintiff must first raise all his challenges through administrative removal proceedings, and then, if necessary, in the appropriate court of appeals.

To start, 8 U.S.C. § 1252(b)(9) eliminates this Court's jurisdiction over Plaintiff's claims by channeling all challenges to immigration proceedings (and removal orders) to the courts of appeals:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien* from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. As the Second Circuit explained,

17

§ 1252(b)(9) requires claims like Plaintiff's to be consolidated in one proceeding before the Court of Appeals:

> Congress enacted [8 U.S.C. § 1252(b)(9)] for the important purpose of consolidating all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals . . . . Before [8 U.S.C. § 1252(b)(9)], only actions attacking the deportation order itself were brought in a petition for review while other challenges could be brought pursuant to a federal court's federal question subject matter jurisdiction under 28 U.S.C. § 1331. Now, by establishing "exclusive appellate court" jurisdiction over claims "arising from any action taken or proceeding brought to remove an alien," all challenges are channeled into one petition.

*Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2).

Moreover, Section 1252(a)(5) reiterates that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen*

*v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple" (internal quotation marks omitted)).

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).  Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."  *See also Ajlani*, 545 F.3d at 235 ("jurisdiction to review such claims is vested exclusively in the courts of appeals").  The petition-for-review process before the court of appeals thus ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their 'day in court.'"  *J.E.F.M.*, 837 F.3d at 1031-32; *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit has explained that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking."  *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  Those provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, which includes any challenge that is inextricably intertwined with the final order of removal that precedes issuance of any removal order, *id.*, as well as decisions to detain for purposes of removal or for proceedings, *Jennings v. Rodriguez*, 583 U.S. 281, 294-95, 317-18 (2018) (§ 1252(b)(9) includes challenges to "decision to detain [alien] in the first place or to seek removal," which precedes any issuance of an NTA).  Here, Plaintiff's claims challenge the government's ability to arrest and detain him in the first place and to place him in removal proceedings, which all arise from the

government's efforts to remove him.  As such, the Court lacks jurisdiction over this action.  *See, e.g.*, *Ali v. Barr*, 464 F. Supp. 3d 549, 557-58 (S.D.N.Y. 2020) (lack of jurisdiction over issues arising from removal proceedings); *P.L. v. ICE*, No. 19 Civ. 1336 (ALC), 2019 WL 2568648, at *2 (S.D.N.Y. June 21, 2019) (collecting cases) ("Where immigrants in removal proceedings seek to directly or indirectly challenge removal orders or proceedings, the Second Circuit and district courts within the circuit have held district courts do not have jurisdiction."); *Selvarajah v. U.S. Dep't of Homeland Security*, No. 10 Civ. 4580 (JGK), 2010 WL 4861347, at *4 (S.D.N.Y. Nov. 30, 2010) ("challenges to actions that are part of [an ongoing] removal proceeding have been treated in the same manner as challenges to removal orders, for jurisdictional purposes"); *see also Taal v. Trump*, No. 25 Civ. 335 (ECC), 2025 WL 926207, at *2 (N.D.N.Y. Mar. 27, 2025) ("Plaintiffs have not established that the Court has subject matter jurisdiction over Taal's claim for a temporary restraining order enjoining his removal proceedings."); *cf. Qiao v. Lynch*, 672 F. App'x 134, 135 (2d Cir. 2017) ("Like the district court, we conclude that the IJ's challenged order reopening removal proceedings against Qiao is inextricably linked to the removal proceedings, as well as any removal order that may ultimately result from reopening those proceedings.").

Indeed, when confronted with near-identical claims, the Third Circuit recently held that 8 U.S.C. § 1252(b)(9) stripped the district court of jurisdiction to hear them.  *Khalil v. President*, 164 F.4th 259, 276 (3d Cir. 2026).  In that case, Khalil was also charged with removability by Secretary Rubio under 8 U.S.C. § 1227(a)(4)(C), but unlike Plaintiff, was subsequently detained.  *See id.* at 266.  Khalil argued "that the government [was] targeting him under a policy of punishing aliens' pro-Palestinian speech," and "challenge[d] a broad array of alleged governmental misconduct under the First and Fifth Amendments, as well as the [APA] and *Accardi v. Shaughnessy*."  *Compare id.* at 267, *with* AC ¶¶ 80-91, 95-122 (describing "retaliatory playbook

against noncitizens whose speech it disfavors" and asserting *inter alia* claims under the First and Fifth Amendments, the APA, and *Accardi*). Because "addressing any of those claims would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process"—the Court held that 8 U.S.C. § 1252(b)(9) channeled any judicial review of those claims in a PFR filed in the appropriate court of appeals once the administrative removal process is complete. *See Khalil*, 164 F.4th at 276. In other words, because Khalil, like Plaintiff, "raise[d] legal questions that a PFR court can meaningfully review later on, the INA bars him from attacking his detention and removal" in district court. *Id.* at 281. For the same reasons, Plaintiff's complaint should be dismissed.[4]

---

[4] Contrary to Plaintiff's prior arguments, *see* Dkt. Nos. 44, 46, Second Circuit precedent is not to the contrary. In *Mahdawi*, the Second Circuit denied the Government's request of a stay of a temporary restraining order which prohibited the government from removing the petitioner from the district and released him pending the adjudication of his habeas proceedings. *See Mahdawi v. Trump*, 136 F.4th 443, 446-47 (2d Cir. 2025). In that case, the panel held in the context of that stay decision that the district court had subject matter jurisdiction over Mahdawi's claims brought in his habeas petition alleging that his "*detention* . . . violate[d] his rights under the Constitution," because they were "independent of, and collateral to, the removal process." 136 F.4th 443, 450-51 (2d Cir. 2025) (emphasis in original). In that case, the panel was clear that there was a "distinction between detention and removal," because "[w]hile challenges to *removal* can be heard in a petition for review . . . , the same is not true of constitutional challenges to *detention* like those raised by Mahdawi." *Id.* at 452 (emphasis in original). To be sure, *Khalil* did disagree with the reasoning in *Mahdawi*, but that was with respect to Khalil's argument that he had been wrongfully detained. *See Khalil*, 164 F.4th at 279; *see also id.* at 276 ("Though Khalil also challenges his detention, his arguments against it are identical to his arguments against removal."). Plaintiff is not detained and there is no habeas petition before this Court. The merits case in *Mahdawi* is currently pending a decision.

### B.      Plaintiff's Amended Complaint Suffers from Other Defects

For the foregoing reasons, the Court should dismiss this action for lack of subject-matter jurisdiction.  Independent of the above, Plaintiff's claims suffer from other defects that render them subject to dismissal.

First, Plaintiff cannot invoke the APA because he has an adequate remedy at law: the petition for review process.  The APA permits judicial review of agency action only when, *inter alia*, statutes do not "preclude judicial review," 5 U.S.C. § 701(a)(1), and "there is no other adequate remedy in a court," 5 U.S.C. § 704.  Here, Congress barred district court review of Plaintiff's claims in Section 1252.  Accordingly, no claim may lie under the APA.  *See, e.g.*, *Delgado*, 643 F.3d at 55 (no APA claim because § 1252 barred judicial review).  Moreover, Congress channeled into the statutorily prescribed administrative removal procedure review of all legal, constitutional, and factual questions that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the courts of appeals.  As a petition for review provides an adequate remedy at law for Plaintiff's claims, as set out in 8 U.S.C. § 1252, an APA claim may not be asserted in this Court.  *See Aguilar*, 510 F.3d at 11 ("[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one").

Second, Plaintiff's challenge to and request for this Court to vacate the Secretary of State's foreign policy determination invokes an unreviewable political question.  The political question doctrine is an "exception" to the "general" rule that "the Judiciary has a responsibility to decide cases properly before it." *Zivtofsky v. Clinton*, 566 U.S. 189, 194-95 (2012).  A nonjusticiable political question occurs when "there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department[] or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v.*

*Carr*, 369 U.S. 186, 217 (1962)).  "In such a case," the political question doctrine deprives a court

of "the authority to decide the dispute before it."  *Zivtofsky*, 566 U.S. at 195.

The political question doctrine requires "a case-by-case inquiry."  *Whiteman v. Dorotheum*

*GmbH*, 431 F.3d 57, 70 (2d Cir. 2005).  A claim is nonjusticiable if it satisfies any one of "six

independent tests" the Supreme Court enumerated in *Baker v. Carr*:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate
> political department; or [2] a lack of judicially discoverable and manageable
> standards for resolving it; or [3] the impossibility of deciding without an initial
> policy determination of a kind clearly for nonjudicial discretion; or [4] the
> impossibility of a court's undertaking independent resolution without expressing
> lack of the respect due coordinate branches of government; or [5] an unusual need
> for unquestioning adherence to a political decision already made; or [6] the
> potentiality of embarrassment from multifarious pronouncements by various
> departments on one question.

*Whiteman*, 431 F.3d at 70 (quoting *Baker*, 369 U.S. at 217); *see Schneider v. Kissinger*, 412 F.3d

190, 194 (D.C. Cir. 2005) ("To find a political question, we need only conclude that one factor is

present, not all.").

Here, Plaintiff's challenge to the Secretary's foreign policy determination is nonjusticiable.

Necessarily, Plaintiff's requested injunction sits at the intersection of two issues textually

committed to the political branches of the government: (1) foreign affairs, *see United States v.*

*Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936); *State of California v. United States*, 104

F.3d 1086, 1091 (9th Cir. 1997) ("the issue of protection of the States from invasion implicates

foreign policy concerns which have been constitutionally committed to the political branches");

*see also El-Shifa Pharmaceutical Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010)

("The political question doctrine bars our review of claims that, regardless of how they are styled,

call into question the prudence of the political branches in matters of foreign policy or national

security constitutionally committed to their discretion."); and (2) immigration policy, *see Mathews*

*v. Diaz*, 426 U.S. 67, 81 (1976) ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."). As observed by the Supreme Court, "any policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

Additionally, there is simply no manageable standard on what constitutes "potentially serious adverse foreign policy consequences." 8 U.S.C. § 1227(a)(4)(C)(i). Nor is there a manageable standard on what constitutes a "compelling foreign policy interest." 8 U.S.C. § 1227(a)(4)(C)(ii). Plaintiff is asking this Court to "displac[e] the Executive in its foreign policy making role" and to reverse a political decision that has already been made. *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 389-90 (3d Cir. 2006). But second-guessing foreign policy decisions is exactly what the political question doctrine was meant to insulate from judicial review. *Id.* at 390.

## II.   THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### A. Likelihood of Success on the Merits

Plaintiff cannot establish a likelihood of success on the merits, because at a minimum the Court lacks subject-matter jurisdiction over all of Petitioner's claims. *See supra* pp. 12-24. Additionally, Plaintiff cannot bring claims under the APA because his claims in this Court are barred by statute, and he has an adequate remedy at law. Thus, the Court need proceed no further in its analysis of Plaintiff's motion for a preliminary injunction. *See, e.g.*, *Laker Airways Ltd. v.*

*Sabena, Belgian World Airlines*, 731 F.2d 909, 921 (D.C. Cir. 1984) ("If there is no justification for the court's exercise of jurisdiction, the injunctive relief should necessarily fail.").

### B. Irreparable Harm

Plaintiff falls short of establishing "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Plaintiff, who seeks, among other things, to prevent his detention by ICE and prevent his removal, does not meet that standard.

Plaintiff has administrative remedies available to him in any future removal proceedings. Even if he is detained, Plaintiff may request that an immigration judge determine whether he is properly subject to removal under 8 U.S.C. § 1227(a)(4). *See* 8 C.F.R. § 1003.19(h)(2)(ii); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wisc. 2007), *aff'd sub nom. Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007). He can submit evidence and legal authority as to whether he is properly included within the removability charge to allow the immigration judge to make the determination in the first instance. *Hussain*, 492 F. Supp. 2d at 1033. If Plaintiff disagrees with that determination, he can seek review before the BIA. 8 C.F.R. § 1003.19(f); *see also Hussain*, 492 F. Supp. 2d at 1033 (discussing BIA's decision determining proper detention authority and custody review process). Relatedly, if removal proceedings were commenced against Plaintiff, he could move to terminate his removal proceedings before the immigration judge, and if successful, that would also result in his release from detention. And if Petitioner is detained and he believes his detention is unlawful, he can file a habeas petition under 28 U.S.C. § 2241 in his district of confinement. In short, Plaintiff has not shown that he will be irreparably harmed if he is detained and required to exhaust his claims administratively in immigration court.

*See, e.g.*, *Aguilar*, 510 F.3d at 14 (noting that irreparable harm in the context of enduring a delay by exhausting administrative remedies may be shown where doing so "might trigger a severe medical setback" or where a "plaintiff's physical condition and dependence on disability benefits would damage him in way not recompensable through retroactive payments" (cleaned up)).

### C.  Balance of the Equities and Public Interest

The balance-of-equities factors "merge" because the government is the opposing party, and the government's interest *is* the public interest.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, this factor weighs in the government's favor and against granting injunctive relief.  It is well settled that the public interest in the enforcement of the United States' immigration laws is significant.  *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435.  There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436.  That principle extends to the prompt resolution of determining removability because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'"  *Id.* (quoting *AADC*, 525 U.S., at 490).  Granting the preliminary injunctive relief that Petitioner seeks would impair the government's ability to carry out its official duties, which is contrary to the public interest.

### D.  The Court Should Require Bond

Finally, if the Court grants Plaintiff's requested preliminary injunction—which it should not for all of the foregoing reasons—it should order security.  Under Rule 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Respondents if they are later found to "have been wrongfully enjoined."  Fed. R. Civ. P. 65(c).  If the Court issues a preliminary injunction here, it should require Plaintiff to post

an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction and dismiss Plaintiff's complaint, or, in the alternative, transfer this case to the U.S. District Court for the District of Columbia.

Dated: March 13, 2026
      New York, New York

                                    Respectfully submitted,

                                    JAY CLAYTON
                                    United States Attorney

By:   */s/ Dana Walsh Kumar*
        DANA WALSH KUMAR
        DANIELLE J. MARRYSHOW
        Assistant United States Attorneys
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.:   (212) 637-2741/2689
        Email: dana.walsh.kumar@usdoj.gov
                  danielle.marryshow@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum contains 8,750 words, which exceeds the limit set by the Court's Individual Practices.  On March 13, 2026, the Government requested leave to file an enlarged brief.  *See* ECF No. 47.