# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


COALITION FOR INDEPENDENT            Civil Case
TECHNOLOGY RESEARCH,                 No. 26-00815 JEB


                    Plaintiff(s),
          v.
                                     Washington, D.C.
MARCO RUBIO, et al.,
                                     May 13, 2026
                    Defendant(s).

------------------------------------------------------------

                 PRELIMINARY INJUNCTION HEARING
            BEFORE THE HONORABLE JAMES E. BOASBERG
              UNITED STATES DISTRICT CHIEF JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):  Caroline M. DeCell, Esquire
                       Alexander A. Abdo, Esquire
                       Anna Diakun, Esquire
                       Jameel Jaffer, Esquire
                       Katherine A. Fallow, Esquire
                       Raya Koreh, Esquire
                       Knight First Amendment Institute at
                        Columbia University
                       475 Riverside Drive
                       Suite 302
                       New York City, New York 10115

FOR THE DEFENDANT(S):  Zachariah Lindsey, Esquire
                       Dhruman Sampat, Esquire
                       United States Attorney's Office
                       District of Columbia
                       601 D Street Northwest
                       Washington, D.C. 20004


REPORTED BY:           Tammy Nestor, RMR, CRR
                       Official Court Reporter
                       333 Constitution Avenue Northwest
                       Washington, D.C. 20001
                       tammy_nestor@dcd.uscourts.gov
```

The following proceedings began at 11:03 a.m.:

THE COURT:  Good morning, everyone.

THE COURTROOM DEPUTY:  Good morning, Judge.

Good morning, everyone.  We are here today on Civil Case 26-cv-815, Coalition for Independent Technology Research versus Marco Rubio, et al.

Beginning with counsel for the plaintiff, please approach the lectern and identify yourself for the record.

MS. DeCELL:  Thank you.

Good morning, Your Honor.  My name is Carrie DeCell, and I represent the plaintiff, Coalition for Independent Technology Research or CITR in this case.

I am joined today by my colleagues at counsel table Katherine Fallow, Raya Koreh, Anna Diakun, Alex Abdo, and Jameel Jaffer.

Also with us in the courtroom today are the director and many members of CITR.

THE COURT:  Okay.  Thanks very much.

I will just have government announce themselves, please.

MR. LINDSEY:  Sure.  Good morning, Your Honor.  My name is Zach Lindsey.  I'm representing the United States.

With me at the table is Dhru Sampat, who is another AUSA representing the US.

THE COURT:  Okay.  Welcome.

This is quite a complex case, I will say, and what makes it difficult is there are really numerous axes that intersect in different ways which can yield different results.

In other words, I see it as four different issues that have to be resolved here starting with what the policy itself is and whether it is a unified or bifurcated policy.

Second, the issue of standing, I think, is complicated, whether we are talking about organizational standing or associational standing and for whom.

Then the merits of the claims as the First Amendment, Fifth Amendment, and APA are also not easily untangled.

And then the forms of relief that are available depending on what standing and what claim prevails are also complex.

So I appreciate everybody's effort. There is some talking past one another, but I guess that can't be fixed in a case where you really have these multiple axes swirling about, to probably mix a metaphor.

All right. So what I would like to do in the argument is to try to take each of the issues separately, the remedy should be woven in, but to talk about the framing, standing, and First Amendment, Fifth Amendment maybe, and APA.

And so, Ms. DeCell, I will let you go first, then we

will hear from Mr. Lindsey, and I will give you few minutes for rebuttal, Ms. DeCell.

MS. DeCELL:  Thank you, Your Honor.  So we are here today because the government has adopted and expanded a new immigration policy that is designed to chill speech about social media.  And it has been quite effective to that end, especially with CITR's membership.

The government has already made an example of the leaders of two CITR member organizations barring them from the country explicitly on the basis of the organization's expressive activities.

In doing so, the government warned that it stood ready and willing to expand the list of people targeted if others do not reverse course.

THE COURT:  Okay.  So let's start with the framing. And so again, the question is whether this is a unified course of agency conduct covering both inadmissibility and deportation or whether it should be bifurcated.  So your position, of course, is that it's unified.  Tell me why.

MS. DeCELL:  Yes, Your Honor.  The government has pursued a policy beginning in May of last year, but importantly, extending and expanding through December of last year, the government has submitted a memo in support of a May 28, 2025 announcement by Secretary Rubio with respect to a visa restriction on --

THE COURT:  Let me just ask you about that just quickly, and I will ask the government.  I just want to -- I think this is an obvious question, but I just want to make sure.

So the post by the secretary is on May 28 --

MS. DeCELL:  Yes, Your Honor.

THE COURT:  -- 2025, and it talks about -- it says, Today I'm announcing a new visa restriction policy.

The action memo for the secretary from the undersecretary for public diplomacy is May 23.  I'm assuming that the memo that is approved is the memo we are talking about on May 28.

MS. DeCELL:  That's our understanding, Your Honor, yes.

THE COURT:  And, Mr. Lindsey, if you disagree, you can let me know when you -- when it's your turn.

Continue, please.

MS. DeCELL:  That is one component of the policy we are challenging.  But importantly, the policy includes at least two other components, and those relate to actions that defendants took in early December of 2025 and late December 2025.

The first of those is a cable that the government sent to consular officers abroad instructing them to scrutinize visa applications for evidence that the

applicants had studied mis and disinformation, engaged in fact-checking, content moderation, trust and safety work, et cetera, and then to pursue a finding of ineligibility for a visa if they concluded that the applicants were engaged in or, quote, complicit in censorship of speech in the United States.

THE COURT:  So what connects the specific deportation determinations to the policy itself?

MS. DeCELL:  Yeah, so the deportation aspect comes through actions taken on December 23, 2025.  On December 23, 2025, Secretary Rubio announced foreign policy determinations with respect to five specific individuals.  Two of those were lawful permanent residents in the United States.  One of those, Mr. Ahmed, is the leader of a CITR member organization.

And Secretary Rubio announced those determinations with respect to inadmissibility and deportability in a single breath in an announcement on December 23 referring to the same foreign policy determinations as justification for both inadmissibility and deportation.  And the government has since referred to the deportability determinations as part of the (3)(C) policy announced in May.

THE COURT:  Okay.  But is there anything in the policy itself that actually establishes that it reaches the deportation side?

MS. DeCELL:  So we view the policy as having expanded to encompass any efforts to kick people out of the country or keep people out of the country based --

THE COURT:  I guess what I would mean is the May policy as announced, do you think that anything in there specifically links it to the deportation side?

MS. DeCELL:  That's why we believe the policy was expanded, Your Honor.  We do think the May policy, from what we have seen from the government in connection with the May policy, it does appear to be restricted to visa issuance.  Although, importantly, that policy, as the government reportedly understood it in the cable that I referenced in December, understood that that policy would apply to people in the United States who are applying for renewed visas, not just people outside of the United States applying for visas in the first instance.

So that determination would still result in the exclusion of people who are already here based on that protected activity.

But with deportation of lawful permanent residents, that's where the December enforcement actions and all of the related public statements support our characterization of the policy that it encompasses deportation as well as relevant legal doctrine that suggests that from a pragmatic standpoint that is all part of the same final agency action.

THE COURT:  But if I found that there was a policy announced in May but that the deportations were individual actions unconnected with the policy, so in other words, I found a bifurcation, which is what the government asks and not you, then what relief could you get?

Assuming I found, A, there's a policy, and B, there's a violation, a First Amendment violation, by the May policy, is there meaningful relief that you could then get?

MS. DeCELL:  Your Honor, I guess as a factual matter, if you believe that the December kind of deportation determinations that were made on the same basis as the admissibility determinations is a discrete policy, that's encompassed within our challenge and we are seeking relief against what amounts to a deportation policy even if it's separate --

THE COURT:  Then your complaint could be read as bringing challenges to two policies?

MS. DeCELL:  I suppose, Your Honor; although, I do think that runs directly contrary to the facts on the ground and the ways that the government itself has characterized this policy as one consistent policy that encompasses efforts no matter whether it's through admissibility or deportability determinations to keep people out of the country or kick people out of the country based on this First Amendment protected activity.

THE COURT:  Let's move to standing.

MS. DeCELL:  Yes.

THE COURT:  What do you think your strongest theory on standing is, because you lead with the GDI example, which I'm dubious of.  So tell me what you think your strongest standing argument is.

MS. DeCELL:  Your Honor, I think perhaps the most straightforward path to standing in this case is actually through the Supreme Court's decision in First Choice Women's Resource Center which makes abundantly clear that if government action deters individuals from associating with an organization, that that organization suffers a First Amendment injury sufficient for standing.

THE COURT:  So this would be organizational standing for CITR itself as opposed --

MS. DeCELL:  Yes, Your Honor.

THE COURT:  Right, because if you were seeking it -- sort of a two-step process.  If you were seeking it via GDI, then you would be seeking associational standing via GDI, but you would have to show the GDI had organizational standing, right?

MS. DeCELL:  Your Honor, I think with respect to GDI, the clearer path to standing is through the Mandel argument as recently reaffirmed in Murthy v. Missouri where the court made clear very specifically in the standing context that if

an organization has a specific concrete connection to a speaker who is prevented from speaking to that organization, then that suffices for standing.

THE COURT:  Okay.  Let's go -- since I want to -- let's skip GDI for the time being.  Go back to why -- your argument would be that CITR has organizational standing in its own right without worrying about standing for its members, correct?

MS. DeCELL:  Yes, Your Honor; although, we believe there's plenty of grounds for standing for the members as well.

THE COURT:  I'm not asking you to waive or concede any arguments.  Explain to me why First Choice gives you more than you had before the decision.

MS. DeCELL:  Not necessarily more than we had, Your Honor.  We think that Americans for Prosperity Organization v. Bonta clearly established that you can have a First Amendment injury based on the chilling effects on association from government action.  But we think following the First Choice decision, that argument is just abundantly clear.  And First Choice importantly also addresses the government's contention that this policy is not self-executing and establishes that if the policy itself, the awareness of the policy and the threat of liability or the threat of future punishment creates a deterrent effect,

then that deterrent effect can suffice for First Amendment injury for standing purposes.

THE COURT:  If the organizational standing rests on the chill to its -- the chill of its members' participation in CITR events and activities, why is that an injury to CITR as opposed to an injury to its members?

MS. DeCELL:  First, in the same way that it was in First Choice, Your Honor.  The disconnect, the burden, on one's right to associate affects the organization who is harmed by people's unwillingness to associate with it because of the government action.

But looking to the PETA standard, for example, that clearly creates an injury.  You've just referenced the events that have been thrown into turmoil because of this policy.  And so the associational harm resulting from the policy has impacted CITR's programmatic activities in very concrete ways and as a result led to a significant diversion of resources to combat that harm.

THE COURT:  Now, if I find organizational standing for CITR under this theory, do you believe you would be able to achieve all of the relief you seek via that standing alone?

MS. DeCELL:  We do, Your Honor, because the people who are being deterred from associating with CITR, from attending events, whether it's in the United States or

outside the United States, I mean, effectively respecting this kind of concrete boundary that the government has created with this policy, they include people who have been excluded who are outside the United States based on visa inadmissibility determinations or who would be based on the policy as well as lawful permanent residents inside the United States.

There I would point to an example that we have in our declarations from an anonymous member, CITR member A, who said that they specifically have been deterred from attending events, CITR-specific events, and also from associating with CITR in other important ways.

THE COURT:  And alternatively, you would argue for associational standing based on member A and Dr. Briant?

MS. DeCELL:  Yes, Your Honor.  So both of them have suffered very specific concrete harm to their professional activities as well as their expressive and associational activities as we have detailed in their declarations, and that's because the government has explicitly threatened to come after people based on the same grounds that it came after other leaders of CITR member organizations.

THE COURT:  Right.  So your argument rests on the idea that member A and Briant are similarly situated to Ahmed, Melford, Ballon, and von Hodenberg, right?

MS. DeCELL:  Yes, that they have viewed the

enforcement actions against individuals and the surrounding public statements identifying the grounds for those actions as mapping onto their own work, and as a result, that's chilled.

THE COURT: But how do you define that class of people? In other words, is this too slippery a definition to find that they are similarly situated?

MS. DeCELL: Your Honor, this is where in our reply brief in particular we have drawn one-to-one connections between the work that member A and Dr. Briant are conducting and the work that was cited as the grounds for excluding or subjecting to deportation Ms. Ahmed -- Mr. Ahmed and Ms. Melford as well as the other individuals.

So, for example, CITR member A has previously advocated for increased data access to researchers, and that was explicitly cited as a ground for excluding Ms. Bellon. And Mr. Ahmed was excluded based on his organization's work on disinformation and his reporting on disinformation.

Dr. Briant, her entire career is based on the study of disinformation in addition to propaganda and what she terms information warfare.

So the idea that Mr. Ahmed, Ms. Melford, the other individuals were excluded on the basis of some other activity that is not the expressive and professional activity that CITR member A and Dr. Briant engage in on a

regular basis finds no support in the record as far as we have seen it, Your Honor.

THE COURT:  Okay.  Let's move on to the substance of the claims.  All right.  We will start with First Amendment.

MS. DeCELL:  Yes.

THE COURT:  So is this facial or as-applied challenge or both?

MS. DeCELL:  Thank you, Your Honor.  So as we construe the policy, as it extends through December 2025 and importantly encompasses the cable that we reference and the December 2025 enforcement actions, we believe the policy is substantially overbroad and fails as a facial matter. That's because it applies to a whole host of private actors based on their expressive activities.

It specifically targets individuals based on the viewpoints expressed in their research and reporting on social media.

The government has not suggested that it's going after everyone who simply has an opinion about speech on social media whatever that opinion is.  It's only going after people who have researched and reported in support of -- or whose research and reporting supports tighter content moderation on the social media platforms.

That is viewpoint discriminatory to begin with, and on top of that, to the extent the government tries to

express an interest in combating that form of censorship, the Supreme Court has made quite clear that that's an illegitimate government interest when it comes to rejiggering the balance of speech on social media.

THE COURT: But so then if it's a facial challenge, then what do you do with the deportations? Are they evidence of the scope of the policy, or how do you treat them if this is a purely facial challenge?

MS. DeCELL: That's exactly right, Your Honor. Evidence of the scope of the policy that extends to lawful permanent residents in the United States and to other individuals who might be subject to deportability determinations.

To be clear, we are not challenging the specific determinations in this case. We are challenging the policy that subjects people to deportability or inadmissibility based on the activity that the government has cited in these examples.

THE COURT: But then don't we need to compare the constitutional and unconstitutional applications of the policy as Moody and others require?

MS. DeCELL: Yes, absolutely, Your Honor.

THE COURT: So do that for me.

MS. DeCELL: Yeah, so the government suggests that there's a plainly legitimate sweep to this policy, but from

what we have seen, we can't identify one.

For starters, to the extent the government has an interest in combating censorship of speech in the United States, based on reporting, we understand that the government conducted an internal investigation to identify those instances and found none, quite clearly concluding, as quoted in New York Times and other reporting, that there were -- and Washington Post, excuse me, reporting, that there were no examples in which European states had overreached to censor in the United States.

THE COURT:  Right, but you agree that you could certainly think of hypothetical examples?

MS. DeCELL:  Perhaps, Your Honor, but I would say that in Americans for Prosperity Foundation, the Court was very clear -- the Supreme Court was very clear that courts need to examine the government's asserted interests and make sure that they're substantiated in some way.

But even if the Court were to believe there is some legitimate government interest at the corner edge of this policy as it has been expanded through December, it quite clearly applies to private actors who are not capable in any sense of committing censorship.

What the government seems to try to do is to flip what is protected speech into censorship so that it can permissibly punish it.  That's not something the First

Amendment allows.

THE COURT:  So if I find there isn't a legitimate facial challenge, are you still bringing as-applied challenges as to the specific deportations, and if so, shouldn't those just be channeled through enforcement proceedings?

MS. DeCELL:  Your Honor, we are not bringing an as-applied challenge to specific deportations.  We're bringing -- to the extent you view the policy as the government construes it as having some legitimate sweep, you know, such that it might survive a facial challenge, we would challenge the policy -- parts of the policy that extend it to private actors based on their First Amendment protected activity.  We would challenge those parts of the policy on a facial matter, but you could alternatively view it as an as-applied challenge to those aspects of the policy.

THE COURT:  If you prevail on a First Amendment facial challenge, do you think you can achieve all of the relief you seek via that, or do you also need to have APA success?

MS. DeCELL:  The APA encompasses claims that government action is contrary to constitutional right, and so I think that's a clear path to APA relief if you conclude that it fails under the Fifth Amendment.

THE COURT:  I'm sorry.  I may have misspoke.  My question was, if you succeed under the facial challenge, can you achieve all the relief that you want in this case?

MS. DeCELL:  Yes, Your Honor, we believe we can because it would support the -- well, in this instance, we are seeking preliminary relief, so a stay under the APA and an injunction preliminarily enjoining the enforcement of the policy given its failure as a facial matter.  So yes, that is the relief we seek here, and we believe that the First Amendment decision would support that.

THE COURT:  Okay.  Last -- I want to ask you about APA for a minute.

So what is the actual identifiable violation or form of violation?  Are you claiming it's arbitrary and capricious?  Are you claiming it's contrary to law?  And if so, what is arbitrary and capricious or contrary to law particularly independent of the First Amendment that we have already talked about?

MS. DeCELL:  Yes, Your Honor, both.

THE COURT:  For a multipart question, I'm sorry, if --

MS. DeCELL:  Not at all.

THE COURT:  -- you want to separate those.

MS. DeCELL:  Thank you.  Yes, so we are making both arguments.  We believe the policy is arbitrary and

capricious in light of the evidence that was reportedly available to the agency at the time.  They have adopted a policy with far-reaching effects based on what we understand to have been an investigation that resulted in the conclusion that there was no evidence of the censorship that this policy purportedly seeks to combat.

So just from a basic APA standpoint, this seems to be an agency decision that was neither well-reasoned nor reasonably explained.  And, of course --

THE COURT:  Because it's viewpoint discriminatory, right?  I mean, that's why it's arbitrary and capricious?

MS. DeCELL:  Yes.  Yes, Your Honor.  It applies to private actors, not just people who might be able to commit censorship on my understanding of what the government's articulation of this policy might be.  So just from a basic administrative procedure perspective, the evidence before the agency does not support the action that they took.

THE COURT:  But is your argument -- isn't this an APA claim -- I'm sorry.  Isn't this just a constitutional claim clothed in APA garb here?  In other words, is there anything that's violative of the APA that's not a First Amendment violation?

MS. DeCELL:  In addition to the fact that it's arbitrary and capricious for the simple fact that the evidence does not support the decision, it also runs counter

to the statutes on which it purportedly rests.  So the foreign policy provisions, as we have explained in our briefing, explicitly prohibit the government from excluding or seeking to deport individuals based on what would be First Amendment protected activity in the United States.

There is a small exception to that if the secretary of state personally determines that the exclusion of an individual would serve a compelling foreign policy interest in the United States.

But the whole point of those provisions was to prohibit exactly what the government is doing here.  So this policy flies in the face of the INA and the provisions on which it purportedly rests.  So as a mere statutory interpretation matter, it is contrary to the law that the agency invokes.

THE COURT:  And let me ask you, in terms of final agency action, what are the legal consequences aside from the specific deportations?

MS. DeCELL:  The legal consequences are that you might be subject to deportation if you engage in these activities, and the D.C. Circuit and this Court and others have made clear that the threat of a punishment, if that's hanging over you, has -- is a legal consequence in itself. It determines your legal right to be in this country because on the government's theory, you have no right to be in this

country if you engage in these activities in a way that the government concludes is complicit in censorship.

So I think a few different cases might be helpful for guidance. The Peterson versus State Department case is helpful in the final agency respect. And just at its bottom, this question about final agency action is a pragmatic one, and it's a question of, you know, what might the consequences be of my own action.

And here, the consequences of engaging in this protected expressive and associational activity are that I might be rounded up, put in an ICE detention facility, and ultimately deported. That's a clear legal consequence that supports final agency action.

THE COURT: Okay. Thank you very much. I will give you a few minutes when I'm finished talking to Mr. Lindsey.

MS. DeCELL: Thank you, Your Honor.

THE COURT: Mr. Lindsey, whenever you're ready.

MR. LINDSEY: Your Honor, by reading the May 23, 2025 policy, which is the policy issued today, reading that policy clearly, it's targeted toward foreign government censorship of American free speech and those that work to further those foreign governments' interests.

Plaintiff has indicated that there's an expansion of the policy in December. The December cable doesn't justify that nor do the enforcement actions justify an expansion of

the policy.  Those would be as-applied challenges to the secretary's decision to make foreign policy interest based determinations for removability or visa revocation.

So those are separate in the actual policy itself, which the government has provided and is the May policy.

THE COURT:  I just want to make sure that we're talking about the same thing.

MR. LINDSEY:  Sure.

THE COURT:  You agree that the May 28 post is talking about the document that I have that's dated May 23 and entitled action memo for the secretary?  Is that right?

MR. LINDSEY:  I believe so, yeah.  The Rubio press release on the state government website would be, yeah, related to -- yes, sir, would be related to it also.

THE COURT:  All right.  Great.  Let's start with why -- do you think this is a unified or bifurcated decision?

MR. LINDSEY:  We think it's unified.

THE COURT:  So you think -- so it is one policy both from May through December?

MR. LINDSEY:  Well, there is no December policy expanding the May 2025 policy.  The December cable is separate and has to do with vetting procedures for H1V applicants.

So it's a distinct, I guess, policy or action memo

from the May policy, but when we talk about this policy that's aimed at deterring foreign government suppression of American speech, we are really just talking about the May policy.

THE COURT:  Okay.  But you would agree that the deportations are examples of the policy and operation?

MR. LINDSEY:  No, Your Honor.  I think that's clear from the Ahmed record which plaintiffs --

THE COURT:  But doesn't the Rubio-Noem memo say that the deportability determination for Mr. Ahmed was based on the same foreign policy objectives articulated in the May policy?

MR. LINDSEY:  It does say that it's based on the same objectives, but it's clear that it's not based on the policy itself.  Rubio, at the end of the day, always has the discretion here under a different statute than the one the policy was enacted, but --

THE COURT:  Okay.  So then on what basis is that deportability determination a freestanding enforcement action?

MR. LINDSEY:  Because it's based on Rubio's discretion under the remove -- deportability statute.

THE COURT:  Then why do they reference the May policy?

MR. LINDSEY:  They simply reference the policy

objectives in the May policy.

THE COURT:  Isn't this a classic example of here's the policy, we are now carrying it out?  Yes, he has discretion.  No one is questioning that.  But why refer to it unless you're effectuating or implementing the policy that you have announced?

MR. LINDSEY:  As I read it, it's simply just noticing that, you know, these are objectives that we think are important for deportability as well as visa revocation, so these are justifications that the secretary can use in his discretion to --

THE COURT:  Do you think the plaintiffs can challenge the May policy on its face?  Can they bring a facial constitutional claim as to the May policy?

MR. LINDSEY:  I do not think they have standing to do so, no.

THE COURT:  So a standing issue, we will talk separately.

So let's say you had a policy that said we're going to deport anybody with red hair.  Could that policy be challenged on its face, or would you have to bring challenges separately for each time the government went and tried to deport someone with red hair?

MR. LINDSEY:  So since we are shifting into deportability, we are running into a jurisdictional issue,

which is, I think, separate from the suit, but it's not under 1252(f)(1) and 1252(g) and (b)(9).  The Court doesn't have jurisdiction to hear those types of challenges.

THE COURT:  So that's what I'm saying.  So you would say there would be no jurisdiction for -- that you couldn't challenge such a policy; you would have to just proceed with individual deportation challenges when they occurred?

MR. LINDSEY:  That's right, Your Honor.

THE COURT:  So no matter how preposterous a policy that was promulgated, there could be no constitutional challenge to that policy?

MR. LINDSEY:  I think their constitutional challenge would be channeled through the removal proceedings and then to the court of appeals.

THE COURT:  Right.  But you would have to do it in each of those enforcement proceedings; you could not bring a suit such as this one?

MR. LINDSEY:  I think that's right, Your Honor.  The hypothetical, I may not be able to fully grasp it, but I believe that's correct.

THE COURT:  Okay.  Just think of any preposterous hypothetical, any preposterous policy, and I'm not implying anything about any administration, I'm just saying hypothetically think of a ridiculous policy, and you are saying it could never be facially challenged?

MR. LINDSEY:  Can I check with -- I have an immigration expert right here.

THE COURT:  Sure.

MR. LINDSEY:  Our office is well-equipped.

So in a removal proceeding, you can challenge the policy itself.  That was the holding in Khalil, which was a Third Circuit case, but it has to still be channeled through the removal --

THE COURT:  So no facial constitutional challenge could be brought to such a policy?

MR. LINDSEY:  Your Honor, I'm not entirely sure what the holding on Khalil was, but we think it might have been facial.

THE COURT:  Okay.  Let's move on to standing for a minute.  Do you agree that if I find organizational standing for CITR, that all remedies they seek are available to them?

In other words, I know you are not conceding that, but I'm just saying if I do find organizational standing, then I don't have to worry about the remedies issue?

MR. LINDSEY:  Your Honor, yes, if CITR has organizational standing, they could -- well, again, with the jurisdictional bar in mind for deportability determinations, it's sort of hard to narrow exactly what the scope of their total relief is, but I think they could bring their First Amendment and Fifth Amendment challenges to the visa

revocation policy, yes.

THE COURT: All right. And that relief would be available to them?

MR. LINDSEY: Right, I believe so.

THE COURT: Okay. Let's talk about associational standing for a minute also, and let's focus on member A and Dr. Briant. Why don't they face a credible threat pre-enforcement on their First Amendment protected research and advocacy?

MR. LINDSEY: I think the most straightforward reason is that they don't declare that they fit under the policy and that they don't declare they are working with or engaged in any foreign government action to censor speech.

THE COURT: So I guess what's the difference between them and the folks who have been deported or barred so far? So Ahmed was found deportable. Melford was barred. Ballon, von Hodenberg, and Breton were sanctioned. What's the difference between member A and Dr. Briant on the one side and those five on the other?

MR. LINDSEY: The people that have been targeted -- and I will note that I don't have their full factual record in front of me, and I think those issues should be played out in as-applied challenges, but what's missing from those two, Emma Briant and member A, is that they don't allege --

(There was an interruption by the court reporter.)

MR. LINDSEY:  I think it's Emma Briant, but it's the two --

THE COURT:  Right.  It's Dr. Briant and member A.

MR. LINDSEY:  Dr. Briant -- thank you.  Is they don't allege any involvement with foreign government.  And I think, just based on what plaintiffs have alleged, the five people in December that have been targeted all had some involvement with a foreign government and their censorship regimes.

THE COURT:  So that's the distinction you believe exists?

MR. LINDSEY:  Right.  That's the clearest, yeah, distinction.

THE COURT:  So on the First Amendment question, assuming standing, you're denying their ability to bring a First Amendment challenge to the policy, a facial challenge, for the reasons you have said, it has to be brought in the specific enforcement channels.

But let me ask you, assuming that they could bring a facial challenge, you would agree that this is viewpoint discrimination here?

MR. LINDSEY:  No, Your Honor, I wouldn't.  It's targeted toward conduct, and that conduct is assisting or facilitating foreign government censorship of free speech.  If you look at the scope of the policy, which is in our

exhibit attached to our PI opposition, it lists off, I think, eight factors which it considers worthy of being subject to this policy and its targeted class.  And none of this is clearly viewpoint discrimination speech.

The first one is threat of arrest for activity on American tech platforms.  The second is ordering American tech platforms to freeze payments.  The third is circumventing international bilateral legal frameworks to impose --

(There was an interruption by the court reporter.)

THE COURT:  I'm aware.

So you're saying that it has to be foreign government?

MR. LINDSEY:  That's right, Your Honor.  It has to be some involvement with a foreign government censorship regime.

THE COURT:  So that's the conduct.  So nobody then -- you are saying that nobody who is involved who's not involved with a foreign government could be deported under this policy?

MR. LINDSEY:  That's right, Your Honor.  Now, I think the level of involvement with the foreign government, that's something that ought to play out in as-applied challenges to the policy.  I think one of their points is that private actors can never be subject to this policy.  But there are

likely instances where private actors can be included.

THE COURT:  Okay.  But I thought you just said that you have to be -- that the only people under -- that are subject to the policy are foreign government actors.

MR. LINDSEY:  So it could be private individuals that are facilitating or working with foreign governments.

THE COURT:  Okay.  So what --

MR. LINDSEY:  But the nexus --

THE COURT:  What --

MR. LINDSEY:  The key is the foreign government involvement.

THE COURT:  Hold on.  Hold on.

So describe the nexus that's required.

MR. LINDSEY:  The nexus would be some sort of -- I mean, it's right here, some sort of working relationship or facilitation of a foreign government censorship regime.

THE COURT:  Okay.  So somebody who is not affiliated with a foreign government and who is advocating for content moderation or a ban on misinformation and disinformation has nothing to fear from this policy?

MR. LINDSEY:  That's right, Your Honor.

THE COURT:  So anybody -- and we'll go back.  I'm sure that Ms. DeCell will tell me about the facts of the five people I have mentioned.  But if any of those falls into such category, then you would -- then doesn't that

explode your argument?

In other words, if any of those people actually isn't working for a foreign government or in some kind of relationship with a foreign government and you have still sanctioned them via deportation or barring from entry, then your argument doesn't fly at all and anybody involved with content moderation is at risk, fair?

MR. LINDSEY:  I don't know if that's quite fair, Your Honor.  I think -- so the May policy is pretty clear on its scope.  As far as as-applied challenges -- and I don't know if we have the full factual records or the reasons for those determinations before us in the court.  I think we have press releases and speculation about the reasons for the most part.  So I wouldn't say that it's fair to rely on those five challenges in this proceeding because this is a facial policy.  I think what's relevant here is the policy scope, which is as represented in the May 23, 2025 policy.

THE COURT:  Okay.  But so then if it's not viewpoint, then you are saying that anybody could say anything they want about content moderation or misinformation as long as they are not affiliated with a foreign government?

MR. LINDSEY:  That's right.  It's not the speech that's being targeted.  It's the conduct or whatever nexus they have with the foreign government.

THE COURT:  All right.  So if anybody is deported

under that -- threatened to be deported under that rationale, we know that's their defense.

Okay. So lastly on APA, so why don't legal consequences follow from the policy?

MR. LINDSEY: Your Honor, could I just step back to the last question? Counsel gave me a note.

THE COURT: Sure.

MR. LINDSEY: I just want to point out that under the enabling statute to the policy, secretary of state always has discretion to use the foreign policy charge. So just simply because it's not covered by the policy doesn't mean there's not some factual scenario somewhere where the secretary, you know, couldn't use his discretion based on some form of speech.

THE COURT: No, I understand the discretion, but I guess, isn't there -- if there are legal consequences, if the -- let's say the policy says one is a standing issue and now one -- and a framing issue, and now I'm asking about an APA issue, that if the policy said all red-headed people shall be deported, then are you saying there are no legal consequences that flow from such a decision such that it couldn't be challenged under the APA?

MR. LINDSEY: The red head example. Your Honor, I think, again, that would have to go through a removal proceeding would be the challenge to that policy. However,

I don't know if the secretary -- I'm not sure if the secretary -- the secretary's discretion under the policy-based charges based on -- they have to make individual determinations under 1182 and, I think, 1227.  So under the foreign policy basis exception, it's not a policy, it's not a class of people, it's specific individuals.

And I think critically here, I think this might help clear it up, is the policy doesn't identify specific individuals or itself subject people to visa revocation or denial.  The secretary still needs for visa denials to make a determination.  This is just simply an investigatory policy in that regard where it's identifying people --

THE COURT:  Right, but the question -- but you would agree that a chill can nonetheless result -- a chill results before you are actually deported?  In other words, it's the threat.  As the Supreme Court just talked about, the threat from the sword of Damocles is that it hangs, not that it falls, right?

MR. LINDSEY:  If someone is working with a foreign government to suppress American free speech, then I think that would be a threat that is being chilled, yes.

THE COURT:  Okay.  Thank you very much.

Ms. DeCell, I will give you a few minutes to rebut.

MS. DeCELL:  Thank you, Your Honor.  Just a few points that I would want to make.

So first, with respect to this argument that the statutes require individualized determinations with respect to deportability and somehow that distinguishes deportability from inadmissibility under the policy, the statutory provisions are literally the same exact language.

The deportability provision incorporates by reference the inadmissibility provision that contains the First Amendment protection that requires a personalized determination by the secretary of state.

So there's no basis for disaggregating the policy because deportability determinations for some reason require an individualized determination that the inadmissibility determinations do not require.

Second, with respect to the conversation about the policy targeting people who facilitate foreign government censorship or are somehow involved in it, the government's understanding of what it means to facilitate that government censorship or being complicit in it as referenced in the May memo is clearly that those individuals are engaged in speech.  They are writing reports.  They are exercising their right to petition government for different policies.

THE COURT:  But you agree -- I mean, the government is trying to make a distinction between speech and conduct here.

MS. DeCELL:  Yes.

THE COURT:  And so do you agree that each of the five individuals has, the comparators, engaged in conduct on behalf of foreign government to -- I won't say suppress speech because I don't mean to be categorial, but to regulate speech?

MS. DeCELL:  No, Your Honor.  That's where I would urge you to look in the exhibits to the attorney declaration in support of our motion where we have included the government's own articulation for the grounds on which they made these decisions.

I mean, for example, with respect to Mr. Ahmed, they say that his group, again, a CITR member organization, created the infamous, quote, disinformation dozen report, so they are engaged in reporting which called for platforms to, in their terms, de-platform individuals.  So again, that's a clearly expressive activity.  It also says --

THE COURT:  What is his foreign government relationship?

MS. DeCELL:  That's what I don't see anywhere reflected in the grounds that were cited for these determinations under this policy.  So the policy as reflected in its applications clearly encompasses inadmissibility determinations and deportability determinations based on expressive activity.  And again, I see no evidence that these five individuals that the people

targeted in December were engaged in conduct that represents censorship or kind of in coordination with governments to engage in censorship.  And I --

THE COURT:  Would you argue that none was engaged in coordination with a foreign government on censorship?

MS. DeCELL:  Based on what the government has put forward as the grounds, I just don't see that, Your Honor.

And I think just one final point about the --

THE COURT:  I agree it's not your burden to go beyond their rationales for deportation.

MS. DeCELL:  In fact, this ambiguity seems to be part of the point.  I mean, when the government -- even in the May memo that precedes the May announcement of the visa restriction policy, the government specifically said that as part of the policy, the secretary should make a public announcement that it's going after people to deter this conduct.  And then, of course, they did make many public announcements, which are clear evidence of the intent to chill this speech.

THE COURT:  Okay.

MS. DeCELL:  Thank you, Your Honor.

THE COURT:  All right.  Thank you very much.

Thank you, Mr. Lindsey.  I appreciate it.

I will do my best to get it all figured out.

Appreciate everyone's work.

(The hearing concluded at 11:51 a.m.)

- - -

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

5/14/26                         s/ Tammy Nestor
                                Tammy Nestor, RMR, CRR
                                Official Court Reporter
                                333 Constitution Avenue NW
                                Washington, D.C. 20001
                                tammy_nestor@dcd.uscourts.gov

38

MR. LINDSEY: [40] 2/21 21/18 22/8 22/12 22/18 22/21 23/7 23/13 23/21 23/25 24/7 24/15 24/24 25/8 25/12 25/18 26/1 26/4 26/11 26/20 27/4 27/10 27/20 28/1 28/4 28/12 28/22 29/14 29/21 30/5 30/8 30/10 30/14 30/21 31/8 31/22 32/5 32/8 32/23 33/19

MS. DeCELL: [45] 2/9 4/3 4/20 5/6 5/13 5/18 6/9 7/1 7/7 8/9 8/18 9/2 9/7 9/16 9/22 10/9 10/15 11/7 11/23 12/15 12/25 13/8 14/5 14/8 15/9 15/22 15/24 16/13 17/7 17/22 18/4 18/19 18/22 18/24 19/12 19/23 20/19 21/16 33/24 34/25 35/6 35/19 36/6 36/11 36/21

THE COURT: [85] 2/2 2/18 2/25 4/15 5/1 5/7 5/15 6/7 6/23 7/4 8/1 8/16 9/1 9/3 9/14 9/17 10/4 10/12 11/3 11/19 12/13 12/22 13/5 14/3 14/6 15/5 15/19 15/23 16/11 17/2 17/18 18/1 18/11 18/20 18/23 19/10 19/18 20/16 21/14 21/17 22/6 22/9 22/15 22/19 23/5 23/9 23/18 23/23 24/2 24/12 24/17 25/4 25/9 25/15 25/21 26/3 26/9 26/14 27/2 27/5 27/14 28/3 28/10 28/14 29/11 29/17 30/2 30/7 30/9 30/12 30/17 30/22 31/18 31/25 32/7 32/15 33/13 33/22 34/22 35/1 35/17 36/4 36/9 36/20 36/22

THE COURTROOM DEPUTY: [1] 2/3

**-**

-- 2025 [1] 5/7

**0**

00815 [1] 1/3

**1**

10115 [1] 1/17
1182 [1] 33/4
11:03 [1] 2/1
11:51 [1] 37/1
1227 [1] 33/4
1252 [2] 25/2 25/2
13 [1] 1/6

**2**

20001 [2] 1/23 37/12
20004 [1] 1/20
2025 [11] 4/24 5/7 5/21 5/22 6/10 6/11 14/9 14/11 21/18 22/22 31/17
2026 [1] 1/6
23 [7] 5/10 6/10 6/10 6/18 21/18 22/10 31/17
26 [1] 37/10
26-00815 [1] 1/3
26-cv-815 [1] 2/5
28 [4] 4/24 5/5 5/12 22/9

**3**

302 [1] 1/16
333 [2] 1/23 37/11

**4**

475 [1] 1/16

**5**

5/14/26 [1] 37/10

**6**

601 [1] 1/20

**8**

815 [1] 2/5

**A**

a.m [2] 2/1 37/1
Abdo [2] 1/12 2/14
ability [1] 28/15
able [3] 11/20 19/13 25/19
about [26] 3/9 3/19 3/22 4/5 5/1 5/7 5/12 10/7 14/19 18/11 18/18 21/6 22/7 22/10 23/1 23/3 25/23 26/19 27/5 30/23 31/13 31/20 32/18 33/16 34/14 36/8
above [1] 37/6
above-entitled [1] 37/6
abroad [1] 5/24
absolutely [1] 15/22
abundantly [2] 9/10 10/20
access [1] 13/15
accurate [1] 37/5
achieve [3] 11/21 17/19 18/3
action [15] 5/9 7/25 9/11 10/19 11/11 17/23 19/17 20/17 21/6 21/8 21/13 22/11 22/25 23/20 27/13
actions [8] 5/20 6/10 7/21 8/3 13/1 13/2 14/11 21/25
activities [8] 4/11 11/5 11/16 12/17 12/18 14/14 20/21 21/1
activity [11] 7/19 8/25

17/14 20/5 21/10 29/5 35/16 35/24
actors [7] 14/13 16/21 17/13 19/13 29/25 30/1 30/4
actual [2] 18/13 22/4
actually [4] 6/24 9/8 31/2 33/15
addition [2] 13/20 19/23
addresses [1] 10/21
administration [1] 25/23
administrative [1] 19/16
admissibility [2] 8/12 8/22
adopted [2] 4/4 19/2
advocacy [1] 27/9
advocated [1] 13/15
advocating [1] 30/18
affects [1] 11/9
affiliated [2] 30/17 31/21
after [5] 12/20 12/21 14/19 14/21 36/16
again [6] 4/16 26/21 32/24 35/12 35/15 35/24
against [2] 8/14 13/1
agency [10] 4/17 7/25 19/2 19/8 19/17 20/15 20/17 21/5 21/6 21/13
agree [9] 16/11 22/9 23/5 26/15 28/20 33/14 34/22 35/1 36/9
Ahmed [10] 6/14 12/24 13/12 13/12 13/17 13/22 23/8 23/10 27/16 35/11
aimed [1] 23/2
al [2] 1/6 2/6
Alex [1] 2/14
Alexander [1] 1/12
all [17] 3/20 7/21 7/25 11/21 14/4 17/19 18/3 18/22 22/15 26/16 27/2 28/7 31/6 31/25 32/19 36/22 36/24
allege [2] 27/24 28/5
alleged [1] 28/6
allows [1] 17/1
alone [1] 11/22
already [3] 4/8 7/18 18/18
also [10] 2/16 3/12 3/14 10/21 12/11 17/20 19/25 22/14 27/6 35/16
alternatively [2] 12/13 17/15
although [3] 7/11 8/18 10/9
always [2] 23/15 32/9
am [1] 2/13
ambiguity [1] 36/11
Amendment [25] 1/15 3/11 3/12 3/23 3/23

11/1 14/4 17/1 17/13 17/18 17/25 18/10 18/17 19/21 20/5 26/25 26/25 27/8 28/14 28/16 34/8
American [5] 21/21 23/3 29/6 29/6 33/20
Americans [2] 10/16 16/14
amounts [1] 8/14
Anna [2] 1/13 2/14
announce [1] 2/19
announced [6] 6/11 6/16 6/22 7/5 8/2 24/6
announcement [4] 4/24 6/18 36/13 36/16
announcements [1] 36/18
announcing [1] 5/8
anonymous [1] 12/9
another [2] 2/23 3/17
any [10] 7/2 10/13 16/21 25/21 25/22 25/23 27/13 28/5 30/24 31/2
anybody [5] 24/20 30/22 31/6 31/19 31/25
anything [5] 6/23 7/5 19/20 25/23 31/19
anywhere [1] 35/19
APA [14] 3/12 3/24 17/20 17/22 17/24 18/6 18/12 19/7 19/18 19/20 19/21 32/3 32/19 32/22
appeals [1] 25/14
appear [1] 7/10
APPEARANCES [1] 1/11
applicants [3] 6/1 6/4 22/24
applications [3] 5/25 15/20 35/22
applied [8] 14/6 17/3 17/8 17/16 22/1 27/23 29/23 31/10
applies [3] 14/13 16/21 19/12
apply [1] 7/13
applying [2] 7/14 7/15
appreciate [3] 3/16 36/23 36/25
approach [1] 2/8
approved [1] 5/11
arbitrary [5] 18/14 18/16 18/25 19/11 19/24
are [62] 2/4 2/16 3/2 3/9 3/12 3/13 3/14 4/3 5/11 5/19 7/14 7/18 8/13 11/24 12/4 12/23 13/7 13/10 15/6 15/14 15/15 16/21 17/3 17/7 18/6 18/14 18/15 18/24 20/17 20/19 21/10 22/4 23/3 23/6 24/3 24/8 24/8 24/10

14/25 25/24 26/16 26/17 27/12 29/18 29/25 30/3 30/4 30/6 31/19 31/21 32/16 32/20 32/20 33/15 34/5 34/16 34/19 34/20 34/20 35/14 36/18
argue [2] 12/13 36/4
argument [10] 3/21 9/6 9/23 10/6 10/20 12/22 19/18 31/1 31/6 34/1
arguments [2] 10/13 18/25
arrest [1] 29/5
articulated [1] 23/11
articulation [2] 19/15 35/9
as [67] 3/5 3/11 6/19 6/21 7/1 7/5 7/11 7/23 7/23 8/9 8/11 8/16 8/21 9/15 9/24 10/10 11/6 11/17 12/6 12/6 12/17 12/17 12/18 13/3 13/3 13/11 13/13 13/13 13/16 14/1 14/1 14/6 14/8 14/9 14/12 15/21 16/6 16/20 17/3 17/4 17/8 17/9 17/10 17/16 17/16 18/8 20/2 20/13 22/1 24/7 24/9 24/9 24/14 25/17 27/23 29/23 31/10 31/10 31/10 31/17 31/20 31/20 33/16 34/18 35/21 36/7 36/14
as-applied [8] 14/6 17/3 17/8 17/16 22/1 27/23 29/23 31/10
aside [1] 20/17
ask [5] 5/1 5/2 18/11 20/16 28/19
asking [2] 10/12 32/18
asks [1] 8/4
aspect [1] 6/9
aspects [1] 17/16
asserted [1] 16/16
assisting [1] 28/23
associate [2] 11/9 11/10
associating [3] 9/11 11/24 12/12
association [1] 10/19
associational [7] 3/10 9/19 11/15 12/14 12/17 21/10 27/5
assuming [4] 5/10 8/6 28/15 28/19
attached [1] 29/1
attending [2] 11/25 12/11
attorney [1] 35/7
Attorney's [1] 1/19
AUSA [1] 2/24
available [4] 3/13 19/2 26/16 27/3
Avenue [2] 1/23 37/11
aware [1] 29/11

**A**

awareness [1] 10/24
axes [2] 3/2 3/18

**B**

back [3] 10/5 30/22 32/5
balance [1] 15/4
Ballon [2] 12/24 27/16
ban [1] 30/19
bar [1] 26/22
barred [2] 27/15 27/16
barring [2] 4/9 31/5
based [28] 7/3 7/18 8/24 10/18 12/4 12/5 12/14 12/20 13/17 13/19 14/14 14/15 15/17 16/4 17/13 19/3 20/4 22/2 23/10 23/13 23/14 23/21 28/6 32/13 33/3 33/3 35/24 36/6
basic [2] 19/7 19/15
basis [7] 4/10 8/11 13/23 14/1 23/18 33/5 34/10
be [53] 3/6 3/17 3/22 4/18 7/10 8/16 9/14 9/19 10/6 11/20 12/5 15/12 15/14 17/5 19/7 19/13 19/15 20/4 20/20 20/24 20/25 21/3 21/8 21/11 22/1 22/13 22/14 24/20 25/5 25/10 25/13 25/19 25/25 26/7 26/10 27/2 27/22 28/17 29/12 29/14 29/19 29/25 30/1 30/3 30/5 30/14 32/1 32/20 32/22 32/25 33/21 35/4 36/11
because [16] 4/4 9/4 9/17 11/11 11/14 11/23 12/19 14/13 18/5 19/10 20/24 23/21 31/15 32/11 34/11 35/4
been [10] 4/6 11/14 12/3 12/10 16/20 19/4 26/12 27/15 27/20 28/7
before [5] 1/9 10/14 19/16 31/12 33/15
began [1] 2/1
begin [1] 14/24
beginning [2] 2/7 4/21
behalf [1] 35/3
being [6] 10/5 11/24 29/2 31/23 33/21 34/18
believe [13] 7/7 8/10 10/9 11/20 14/11 16/18 18/4 18/9 18/25 22/12 25/20 27/4 28/10
Bellon [1] 13/16
best [1] 36/24
between [4] 13/10

beyond [1] 36/9
bifurcated [3] 3/7 4/18 22/16
bifurcation [1] 8/4
bilateral [1] 29/8
BOASBERG [1] 1/9
Bonta [1] 10/17
both [7] 4/17 6/20 12/15 14/7 18/19 18/24 22/19
bottom [1] 21/6
boundary [1] 12/2
breath [1] 6/18
Breton [1] 27/17
Briant [11] 12/14 12/23 13/10 13/19 13/25 27/7 27/18 27/24 28/1 28/3 28/4
brief [1] 13/9
briefing [1] 20/3
bring [6] 24/13 24/21 25/16 26/24 28/15 28/19
bringing [4] 8/17 17/3 17/7 17/9
brought [2] 26/10 28/17
burden [2] 11/8 36/9

**C**

cable [5] 5/23 7/12 14/10 21/24 22/22
called [1] 35/14
came [1] 12/20
can [16] 3/3 5/16 10/17 11/1 16/24 17/19 18/2 18/4 24/10 24/12 24/13 26/1 26/5 29/25 30/1 33/14
can't [2] 3/17 16/1
capable [1] 16/21
capricious [5] 18/15 18/16 19/1 19/11 19/24
career [1] 13/19
Caroline [1] 1/12
Carrie [1] 2/10
carrying [1] 24/3
case [10] 1/2 2/5 2/12 3/1 3/18 9/8 15/15 18/3 21/4 26/7
cases [1] 21/3
categorial [1] 35/4
category [1] 30/25
censor [2] 16/10 27/13
censorship [18] 6/5 15/1 16/3 16/22 16/24 19/5 19/14 21/2 21/21 28/8 28/24 29/15 30/16 34/16 34/18 36/2 36/3 36/5
Center [1] 9/10
certainly [1] 16/12
certify [1] 37/5
cetera [1] 6/3
challenge [22] 8/13 14/6 15/5 15/8 17/3 17/8 17/11 17/12 17/14 17/16 17/19

25/12 26/5 26/9 28/16 28/16 28/20 32/25
challenged [3] 24/21 25/25 32/22
challenges [11] 8/17 17/4 22/1 24/22 25/3 25/7 26/25 27/23 29/23 31/10 31/15
challenging [3] 5/19 15/14 15/15
channeled [3] 17/5 25/13 26/7
channels [1] 28/18
characterization [1] 7/22
characterized [1] 8/20
charge [1] 32/10
charges [1] 33/3
check [1] 26/1
checking [1] 6/2
CHIEF [1] 1/10
chill [6] 4/5 11/4 11/4 33/14 33/14 36/19
chilled [2] 13/4 33/21
chilling [1] 10/18
Choice [5] 9/9 10/13 10/20 10/21 11/8
Circuit [2] 20/21 26/7
circumventing [1] 29/8
cited [4] 13/11 13/16 15/17 35/20
CITR [19] 2/12 2/17 4/9 6/14 9/15 10/6 11/5 11/5 11/20 11/24 12/9 12/11 12/12 12/21 13/14 13/25 26/16 26/20 35/12
CITR's [2] 4/7 11/16
CITR-specific [1] 12/11
City [1] 1/17
Civil [2] 1/2 2/4
claim [4] 3/14 19/19 19/19 24/14
claiming [2] 18/14 18/15
claims [3] 3/11 14/4 17/22
class [3] 13/5 29/3 33/6
classic [1] 24/2
clear [15] 9/10 9/25 10/21 15/2 15/14 16/15 16/15 17/24 20/22 21/12 23/7 23/14 31/9 33/8 36/18
clearer [1] 9/23
clearest [1] 28/12
clearly [9] 10/17 11/13 16/6 16/21 21/20 29/4 34/19 35/16 35/22
clothed [1] 19/20
COALITION [3] 1/2 2/5 2/11
colleagues [1] 2/13
COLUMBIA [3] 1/1 1/15 1/19
combat [2] 11/18 19/6
combating [2] 15/1

come [1] 12/20
comes [2] 6/9 15/3
commit [1] 19/13
committing [1] 16/22
comparators [1] 35/2
compare [1] 15/19
compelling [1] 20/8
complaint [1] 8/16
complex [2] 3/1 3/15
complicated [1] 3/9
complicit [3] 6/5 21/2 34/18
component [1] 5/18
components [1] 5/20
concede [1] 10/12
conceding [1] 26/17
conclude [1] 17/24
concluded [2] 6/4 37/1
concludes [1] 21/2
concluding [1] 16/6
conclusion [1] 19/5
concrete [4] 10/1 11/17 12/2 12/16
conduct [9] 4/17 28/23 28/23 29/17 31/23 34/23 35/2 36/1 36/17
conducted [1] 16/5
conducting [1] 13/10
connection [2] 7/9 10/1
connections [1] 13/9
connects [1] 6/7
consequence [2] 20/23 21/12
consequences [7] 20/17 20/19 21/8 21/9 32/4 32/16 32/21
considers [1] 29/2
consistent [1] 8/21
Constitution [2] 1/23 37/11
constitutional [7] 15/20 17/23 19/19 24/14 25/10 25/12 26/9
construe [1] 14/9
construes [1] 17/10
consular [1] 5/24
contains [1] 34/7
content [5] 6/2 14/23 30/18 31/7 31/20
contention [1] 10/22
context [1] 9/25
Continue [1] 5/17
contrary [5] 8/19 17/23 18/15 18/16 20/14
conversation [1] 34/14
coordination [2] 36/2 36/5
corner [1] 16/19
correct [2] 10/8 25/20
could [17] 8/5 8/8 8/16 16/11 17/15 24/20 25/10 25/16 25/25 26/10 26/21 26/24 28/19 29/19 30/5 31/19 32/5
couldn't [3] 25/5 32/13 32/22
counsel [3] 2/7 2/13

counter [1] 19/25
country [7] 4/10 7/2 7/3 8/24 8/24 20/24 21/1
course [5] 4/14 4/17 4/19 19/9 36/17
court [15] 1/1 1/22 9/24 15/2 16/14 16/15 16/18 20/21 25/2 25/14 27/25 29/10 31/12 33/16 37/11
Court's [1] 9/9
courtroom [1] 2/16
courts [1] 16/15
covered [1] 32/11
covering [1] 4/17
created [2] 12/3 35/13
creates [2] 10/25 11/13
credible [1] 27/7
critically [1] 33/7
CRR [2] 1/22 37/10
cv [1] 2/5

**D**

D.C [5] 1/5 1/20 1/23 20/21 37/12
Damocles [1] 33/17
data [1] 13/15
dated [1] 22/10
day [1] 23/15
dcd.uscourts.gov [2] 1/24 37/12
de [1] 35/15
de-platform [1] 35/15
DeCell [6] 1/12 2/10 3/25 4/2 30/23 33/23
December [19] 4/22 5/21 5/22 6/10 6/10 6/18 7/13 7/21 8/10 14/9 14/11 16/20 21/24 21/24 22/20 22/21 22/22 28/7 36/1
December 2025 [2] 5/22 14/11
December 23 [3] 6/10 6/10 6/18
decision [9] 9/9 10/14 10/20 18/10 19/8 19/25 22/2 22/17 32/21
decisions [1] 35/10
declaration [1] 35/7
declarations [2] 12/9 12/18
declare [2] 27/11 27/12
Defendant [2] 1/7 1/18
defendants [1] 5/21
defense [1] 32/2
define [1] 13/5
definition [1] 13/6
denial [1] 33/10
denials [1] 33/10
denying [1] 28/15
Department [1] 21/4
depending [1] 3/14
deport [3] 20/4 24/20 24/23
deportability [16] 6/17 6/21 8/23 15/12 15/16 23/10 23/19 23/22

| | | | | |
|---|---|---|---|---|
| **D** | distinguishes [1] 34/3 | engaging [1] 21/9 | extending [1] 4/22 | following [2] 2/1 10/19 |
| deportability... [8] 24/9 24/25 26/22 34/3 34/4 34/6 34/11 35/23 | DISTRICT [4] 1/1 1/1 1/10 1/19 | enjoining [1] 18/7 | extends [2] 14/9 15/10 | foregoing [1] 37/5 |
| | diversion [1] 11/17 | entire [1] 13/19 | extent [3] 14/25 16/2 17/9 | foreign [33] 6/11 6/19 20/2 20/8 21/20 21/22 22/2 23/2 23/11 27/13 28/5 28/8 28/24 29/12 29/15 29/19 29/22 30/4 30/6 30/10 30/16 30/18 31/3 31/4 31/21 31/24 32/10 33/5 33/19 34/15 35/3 35/17 36/5 |
| deportable [1] 27/16 | do [29] 3/20 4/14 7/5 7/8 8/18 9/3 11/20 11/23 13/5 15/6 15/6 15/7 15/23 16/23 17/19 17/20 21/25 22/16 22/23 23/23 24/12 24/15 24/15 25/15 26/15 26/18 34/13 35/1 36/24 | entirely [1] 26/11 | | |
| deportation [15] 4/18 6/7 6/9 6/20 6/25 7/6 7/20 7/23 8/10 8/14 13/12 20/20 25/7 31/5 36/10 | | entitled [2] 22/11 37/6 | **F** | |
| | | entry [1] 31/5 | face [4] 20/12 24/13 24/21 27/7 | |
| | | equipped [1] 26/4 | | |
| | | especially [1] 4/7 | facial [16] 14/6 14/12 15/5 15/8 17/3 17/11 17/15 17/19 18/2 18/8 24/13 26/9 26/13 28/16 28/20 31/16 | |
| | | Esquire [8] 1/12 1/12 1/13 1/13 1/14 1/14 1/18 1/18 | | |
| deportations [6] 8/2 15/6 17/4 17/8 20/18 23/6 | | | | |
| | doctrine [1] 7/24 | established [1] 10/17 | | |
| | document [1] 22/10 | establishes [2] 6/24 10/23 | facially [1] 25/25 | form [3] 15/1 18/13 32/14 |
| deported [7] 21/12 27/15 29/19 31/25 32/1 32/20 33/15 | does [4] 7/10 19/17 19/25 23/13 | et [3] 1/6 2/6 6/3 | facilitate [2] 34/15 34/17 | forms [1] 3/13 |
| | doesn't [7] 21/24 23/9 25/2 30/25 31/6 32/11 33/8 | et al [1] 2/6 | facilitating [2] 28/24 30/6 | forward [1] 36/7 |
| describe [1] 30/13 | | et cetera [1] 6/3 | | found [5] 8/1 8/4 8/6 16/6 27/16 |
| designed [1] 4/5 | | European [1] 16/9 | facilitation [1] 30/16 | Foundation [1] 16/14 |
| detailed [1] 12/18 | doing [2] 4/12 20/11 | even [3] 8/14 16/18 36/12 | facility [1] 21/11 | four [1] 3/5 |
| detention [1] 21/11 | don't [15] 15/19 26/19 27/7 27/11 27/12 27/21 27/24 28/4 31/8 31/10 32/3 33/1 35/4 35/19 36/7 | | fact [4] 6/2 19/23 19/24 36/11 | frameworks [1] 29/8 |
| deter [1] 36/16 | | events [5] 11/5 11/14 11/25 12/11 12/11 | | framing [3] 3/23 4/15 32/18 |
| determination [6] 7/17 23/10 23/19 33/11 34/9 34/12 | | everybody's [1] 3/16 | fact-checking [1] 6/2 | free [3] 21/21 28/24 33/20 |
| | | everyone [3] 2/2 2/4 14/19 | factors [1] 29/2 | |
| determinations [21] 6/8 6/12 6/16 6/19 6/21 8/11 8/12 8/23 12/5 15/13 15/15 22/3 26/22 31/12 33/4 34/2 34/11 34/13 35/21 35/23 35/24 | dozen [1] 35/13 | | facts [2] 8/19 30/23 | freestanding [1] 23/19 |
| | Dr [1] 28/4 | everyone's [1] 36/25 | factual [4] 8/9 27/21 31/11 32/12 | freeze [1] 29/7 |
| | Dr. [7] 12/14 13/10 13/19 13/25 27/7 27/18 28/3 | evidence [9] 5/25 15/7 15/10 19/1 19/5 19/16 19/25 35/25 36/18 | | front [1] 27/22 |
| | | | fails [2] 14/12 17/25 | full [2] 27/21 31/11 |
| | | exact [1] 34/5 | failure [1] 18/8 | fully [1] 25/19 |
| | Dr. Briant [7] 12/14 13/10 13/19 13/25 27/7 27/18 28/3 | exactly [3] 15/9 20/11 26/23 | fair [3] 31/7 31/8 31/14 | further [1] 21/22 |
| determines [2] 20/7 20/24 | | examine [1] 16/16 | Fallow [2] 1/14 2/14 | future [1] 10/25 |
| deterred [2] 11/24 12/10 | | example [8] 4/8 9/4 11/12 12/8 13/14 24/2 32/23 35/11 | falls [2] 30/24 33/18 | |
| | drawn [1] 13/9 | | far [4] 14/1 19/3 27/15 31/10 | **G** |
| deterrent [2] 10/25 11/1 | Drive [1] 1/16 | examples [4] 15/18 16/9 16/12 23/6 | | garb [1] 19/20 |
| | dubious [1] 9/5 | | far-reaching [1] 19/3 | gave [1] 32/6 |
| deterring [1] 23/2 | | exception [2] 20/6 33/5 | fear [1] 30/20 | GDI [6] 9/4 9/18 9/19 9/20 9/22 10/5 |
| deters [1] 9/11 | **E** | excluded [3] 12/4 13/17 13/23 | few [5] 4/1 21/3 21/15 33/23 33/24 | |
| Dhru [1] 2/23 | each [4] 3/21 24/22 25/16 35/1 | excluding [3] 13/11 13/16 20/3 | Fifth [4] 3/12 3/23 17/25 26/25 | get [3] 8/5 8/8 36/24 |
| Dhruman [1] 1/18 | | | | give [3] 4/1 21/14 33/23 |
| Diakun [2] 1/13 2/14 | early [1] 5/21 | exclusion [2] 7/18 20/7 | figured [1] 36/24 | given [1] 18/8 |
| did [1] 36/17 | easily [1] 3/12 | excuse [1] 16/8 | final [6] 7/25 20/16 21/5 21/6 21/13 36/8 | gives [1] 10/13 |
| difference [2] 27/14 27/18 | edge [1] 16/19 | executing [1] 10/23 | | go [6] 3/25 10/4 10/5 30/22 32/24 36/9 |
| | effect [2] 10/25 11/1 | exercising [1] 34/20 | find [5] 11/19 13/7 17/2 26/15 26/18 | |
| different [6] 3/3 3/3 3/5 21/3 23/16 34/21 | effective [1] 4/6 | exhibit [1] 29/1 | finding [1] 6/3 | going [4] 14/18 14/20 24/19 36/16 |
| | effectively [1] 12/1 | exhibits [1] 35/7 | finds [1] 14/1 | |
| difficult [1] 3/2 | effects [2] 10/18 19/3 | exists [1] 28/11 | finished [1] 21/15 | Good [5] 2/2 2/3 2/4 2/10 2/21 |
| diplomacy [1] 5/10 | effectuating [1] 24/5 | expand [1] 4/13 | first [32] 1/15 3/11 3/23 3/25 5/23 7/16 8/7 8/25 9/9 9/12 10/13 10/17 10/20 10/21 11/1 11/7 11/8 14/4 16/25 17/13 17/18 18/9 18/17 19/21 20/5 26/24 27/8 28/14 28/16 29/5 34/1 34/7 | |
| directly [1] 8/19 | effort [1] 3/16 | expanded [4] 4/4 7/1 7/8 16/20 | | government [64] 2/19 4/4 4/8 4/12 4/20 4/23 5/2 5/23 6/20 7/9 7/11 8/4 8/20 9/11 10/19 11/11 12/2 12/19 14/18 14/25 15/3 15/17 15/24 16/2 16/5 16/19 16/23 17/10 17/23 20/3 20/11 21/2 21/20 22/5 22/13 23/2 24/22 27/13 28/5 28/8 28/24 29/13 29/15 29/19 29/22 30/4 30/10 30/16 30/18 31/3 31/4 31/21 31/24 33/20 34/15 34/17 34/21 34/22 35/3 35/17 36/5 36/6 36/12 36/14 |
| director [1] 2/16 | efforts [2] 7/2 8/22 | | | |
| disaggregating [1] 34/10 | eight [1] 29/2 | expanding [2] 4/22 22/22 | | |
| | Emma [2] 27/24 28/1 | expansion [2] 21/23 21/25 | | |
| disagree [1] 5/15 | enabling [1] 32/9 | | | |
| disconnect [1] 11/8 | enacted [1] 23/17 | expert [1] 26/2 | fit [1] 27/11 | |
| discrete [1] 8/12 | encompass [1] 7/2 | Explain [1] 10/13 | five [7] 6/12 27/19 28/6 30/24 31/15 35/1 35/25 | |
| discretion [8] 23/16 23/22 24/4 24/11 32/10 32/13 32/15 33/2 | encompassed [1] 8/13 | explained [2] 19/9 20/2 | | |
| | encompasses [5] 7/23 8/21 14/10 17/22 35/22 | explicitly [4] 4/10 12/19 13/16 20/3 | fixed [1] 3/17 | |
| | | | flies [1] 20/12 | |
| discrimination [2] 28/21 29/4 | end [2] 4/6 23/15 | explode [1] 31/1 | flip [1] 16/23 | |
| | enforcement [10] 7/21 13/1 14/11 17/5 18/7 21/25 23/19 25/16 27/8 28/18 | express [1] 15/1 | flow [1] 32/21 | |
| discriminatory [2] 14/24 19/10 | | expressed [1] 14/16 | fly [1] 31/6 | government's [6] 10/22 16/16 19/14 20/25 |
| | | expressive [7] 4/11 12/17 13/24 14/14 21/10 35/16 35/24 | focus [1] 27/6 | |
| disinformation [6] 6/1 13/18 13/18 13/20 30/19 35/13 | engage [4] 13/25 20/20 21/1 36/3 | | folks [1] 27/15 | |
| | engaged [8] 6/1 6/4 27/12 34/19 35/2 | | follow [1] 32/4 | |
| distinct [1] 22/25 | | | | |
| distinction [3] 28/10 | | | | |

**G**

government's... [2] 34/16 35/9
governments [2] 30/6 36/2
governments' [1] 21/22
grasp [1] 25/19
Great [1] 22/15
ground [2] 8/19 13/16
grounds [7] 10/10 12/20 13/2 13/11 35/9 35/20 36/7
group [1] 35/12
guess [6] 3/17 7/4 8/9 22/25 27/14 32/16
guidance [1] 21/4

**H**

H1V [1] 22/23
had [7] 6/1 9/20 10/14 10/15 16/9 24/19 28/7
hair [2] 24/20 24/23
hanging [1] 20/23
hangs [1] 33/17
hard [1] 26/23
harm [3] 11/15 11/18 12/16
harmed [1] 11/10
has [34] 4/4 4/6 4/8 4/20 4/23 6/21 8/20 10/1 10/6 11/16 12/2 12/19 13/14 14/18 14/19 15/2 15/17 16/2 16/20 20/23 21/23 22/5 22/23 23/15 24/3 26/7 26/20 28/17 29/12 29/14 30/19 32/10 35/2 36/6
have [50] 2/19 3/6 3/18 7/9 9/20 10/17 11/14 12/3 12/8 12/10 12/15 12/18 12/25 13/9 14/2 14/21 16/1 17/20 18/1 18/17 19/2 19/4 20/2 20/22 20/25 22/10 24/6 24/15 24/21 25/3 25/6 25/15 26/1 26/12 26/19 27/15 27/20 27/21 28/6 28/7 28/17 30/3 30/24 31/4 31/11 31/12 31/24 32/24 33/3 35/8
having [2] 7/1 17/10
he [1] 24/3
head [1] 32/23
headed [1] 32/19
hear [2] 4/1 25/3
hearing [2] 1/9 37/1
help [1] 33/7
helpful [2] 21/3 21/5
her [1] 13/19
here [15] 2/4 3/6 4/3 7/18 18/9 19/20 20/11 21/9 23/16 26/2 28/21 30/15 31/16 33/7 34/24
here's [1] 24/2
hereby [1] 37/5
his [6] 13/17 13/18

Hodenberg [2] 12/24 27/17
Hold [2] 30/12 30/12
holding [2] 26/6 26/12
Honor [45] 2/10 2/21 4/3 4/20 5/6 5/13 7/8 8/9 8/18 9/7 9/16 9/22 10/9 10/16 11/8 11/23 12/15 13/8 14/2 14/8 15/9 15/22 16/13 17/7 18/4 18/19 19/12 21/16 21/18 23/7 25/8 25/18 26/11 26/20 28/22 29/14 29/21 30/21 31/9 32/5 32/23 33/24 35/6 36/7 36/21
HONORABLE [1] 1/9
host [1] 14/13
how [3] 13/5 15/7 25/9
However [1] 32/25
hypothetical [3] 16/12 25/19 25/22
hypothetically [1] 25/24

**I**

I'm [18] 2/22 5/8 5/10 9/5 10/12 18/1 18/20 19/19 21/15 25/4 25/22 25/23 26/11 26/18 29/11 30/22 32/18 33/1
ICE [1] 21/11
idea [2] 12/23 13/22
identifiable [1] 18/13
identify [4] 2/8 16/1 16/5 33/8
identifying [2] 13/2 33/12
illegitimate [1] 15/3
immigration [2] 4/5 26/2
impacted [1] 11/16
implementing [1] 24/5
implying [1] 25/22
important [2] 12/12 24/9
importantly [5] 4/22 5/19 7/11 10/21 14/10
impose [1] 29/9
INA [1] 20/12
inadmissibility [9] 4/17 6/17 6/20 12/5 15/16 34/4 34/7 34/12 35/23
include [1] 12/3
included [2] 30/1 35/8
includes [1] 5/19
incorporates [1] 34/6
increased [1] 13/15
independent [4] 1/2 2/5 2/11 18/17
indicated [1] 21/23
individual [4] 8/2 20/8 25/7 33/4
individualized [2] 34/2 34/12
individuals [15] 6/12 9/11 13/1 13/13 13/23 14/15 15/12 20/4 30/5

35/15 35/25
ineligibility [1] 6/3
infamous [1] 35/13
information [1] 13/21
injunction [2] 1/9 18/7
injury [6] 9/13 10/18 11/2 11/5 11/6 11/13
inside [1] 12/6
instance [2] 7/16 18/5
instances [2] 16/6 30/1
Institute [1] 1/15
instructing [1] 5/24
intent [1] 36/18
interest [6] 15/1 15/3 16/3 16/19 20/8 22/2
interests [2] 16/16 21/22
internal [1] 16/5
international [1] 29/8
interpretation [1] 20/14
interruption [2] 27/25 29/10
intersect [1] 3/3
investigation [2] 16/5 19/4
investigatory [1] 33/11
invokes [1] 20/15
involved [4] 29/18 29/19 31/6 34/16
involvement [5] 28/5 28/8 29/15 29/22 30/11
is [108] 2/10 2/22 2/23 2/23 3/1 3/2 3/7 3/7 3/8 3/16 3/21 4/5 4/16 4/16 4/19 5/3 5/5 5/10 5/11 5/11 5/18 5/23 6/14 6/23 7/4 7/25 8/4 8/8 8/12 9/4 9/6 9/8 9/23 10/2 10/20 10/22 11/5 11/9 13/6 13/8 13/19 13/24 14/6 14/11 14/20 14/24 15/8 16/18 16/23 16/24 17/23 18/9 18/13 18/16 18/25 19/18 19/20 20/6 20/11 20/14 20/23 21/2 21/4 21/6 21/19 22/5 22/9 22/11 22/16 22/19 22/21 22/22 23/18 24/4 25/1 26/4 26/24 27/11 27/24 28/4 28/20 28/23 28/25 29/4 29/5 29/6 29/7 29/18 29/24 30/10 30/17 30/18 31/7 31/9 31/15 31/16 31/17 31/25 32/17 33/8 33/11 33/17 33/19 33/21 34/19 34/23 35/17 37/5
isn't [6] 17/2 19/18 19/19 24/2 31/2 32/16
issuance [1] 7/10
issue [7] 3/8 24/17 24/25 26/19 32/17 32/18 32/19

issues [3] 3/5 3/21 27/22
it [66] 3/2 3/5 3/7 4/6 4/12 4/18 5/7 5/7 6/24 7/6 7/10 7/12 7/23 9/17 9/18 11/7 11/10 12/20 14/2 14/9 14/13 14/15 15/3 16/20 16/20 16/24 16/25 17/10 17/11 17/13 17/16 17/25 18/5 19/12 19/25 20/1 20/13 20/14 20/24 22/14 22/19 23/13 24/3 24/5 24/7 25/15 25/19 25/25 26/7 26/12 28/17 29/1 29/2 29/12 29/14 30/5 32/21 33/8 33/17 33/17 34/16 34/17 34/18 35/16 36/23 36/24
it's [41] 4/19 5/16 8/14 8/22 11/25 14/18 14/20 15/5 18/14 18/15 19/10 19/11 19/23 21/7 21/20 22/18 22/25 23/13 23/14 23/14 23/21 24/7 25/1 26/23 28/1 28/1 28/3 28/22 30/15 31/14 31/18 31/22 31/23 32/11 33/5 33/6 33/6 33/12 33/15 36/9 36/16
its [12] 10/7 10/7 11/4 11/4 11/6 18/8 21/5 24/13 24/21 29/3 31/9 35/22
itself [11] 3/7 6/8 6/24 8/20 9/15 10/23 20/23 22/4 23/15 26/6 33/9

**J**

Jaffer [2] 1/13 2/15
Jameel [2] 1/13 2/15
JAMES [1] 1/9
JEB [1] 1/3
joined [1] 2/13
JUDGE [2] 1/10 2/3
jurisdiction [2] 25/3 25/5
jurisdictional [2] 24/25 26/22
just [31] 2/19 5/1 5/1 5/2 5/3 7/15 10/20 11/13 17/5 19/7 19/13 19/15 19/19 21/5 22/6 23/3 24/7 25/6 25/21 25/23 26/18 28/6 30/2 32/5 32/8 32/10 33/11 33/16 33/24 36/7 36/8
justification [1] 6/19
justifications [1] 24/10
justify [2] 21/24 21/25

**K**

Katherine [2] 1/14 2/14
keep [2] 7/3 8/23

Khalil [2] 26/6 26/12
kick [2] 7/2 8/24
kind [4] 8/10 12/2 31/3 36/2
Knight [1] 1/15
know [10] 5/16 17/11 21/7 24/8 26/17 31/8 31/10 32/2 32/13 33/1
Koreh [2] 1/14 2/14

**L**

language [1] 34/5
last [4] 4/21 4/23 18/11 32/6
lastly [1] 32/3
late [1] 5/21
law [3] 18/15 18/16 20/14
lawful [4] 6/13 7/20 12/6 15/10
lead [1] 9/4
leader [1] 6/14
leaders [2] 4/9 12/21
least [1] 5/20
lectern [1] 2/8
led [1] 11/17
legal [10] 7/24 20/17 20/19 20/23 20/24 21/12 29/8 32/3 32/16 32/20
legitimate [4] 15/25 16/19 17/2 17/10
let [5] 3/25 5/1 5/16 20/16 28/19
let's [11] 4/15 9/1 10/4 10/5 14/3 22/15 24/19 26/14 27/5 27/6 32/17
level [1] 29/22
liability [1] 10/24
light [1] 19/1
like [1] 3/20
likely [1] 30/1
Lindsey [7] 1/18 2/22 4/1 5/15 21/15 21/17 36/23
links [1] 7/6
list [1] 4/13
lists [1] 29/1
literally [1] 34/5
long [1] 31/20
look [2] 28/25 35/7
looking [1] 11/12

**M**

made [6] 4/8 8/11 9/25 15/2 20/22 35/10
make [10] 5/3 16/16 22/2 22/6 33/3 33/10 33/25 34/23 36/15 36/17
makes [2] 3/2 9/10
making [1] 18/24
Mandel [1] 9/23
many [2] 2/17 36/17
mapping [1] 13/3
MARCO [2] 1/6 2/6
matter [8] 8/9 8/22 14/12 17/15 18/8 20/14 25/9 37/7

**M**

may [32]  1/6 4/21 4/24 5/5 5/10 5/12 6/22 7/4 7/8 7/9 8/2 8/7 18/1 21/18 22/5 22/9 22/10 22/20 22/22 23/1 23/3 23/11 23/23 24/1 24/13 24/14 25/19 31/9 31/17 34/18 36/13 36/13
May 2025 [1]  22/22
May 23 [4]  5/10 21/18 22/10 31/17
May 28 [4]  4/24 5/5 5/12 22/9
maybe [1]  3/24
me [13]  2/23 4/19 5/1 5/16 9/5 10/13 15/23 16/8 20/16 27/22 28/19 30/23 32/6
mean [9]  7/4 12/1 19/11 30/15 32/11 34/22 35/4 35/11 36/12
meaningful [1]  8/8
means [1]  34/17
media [5]  4/6 14/17 14/20 14/23 15/4
Melford [4]  12/24 13/13 13/22 27/16
member [15]  4/9 6/15 12/9 12/9 12/14 12/21 12/23 13/10 13/14 13/25 27/6 27/18 27/24 28/3 35/12
members [4]  2/17 10/8 10/10 11/6
members' [1]  11/4
membership [1]  4/7
memo [9]  4/23 5/9 5/11 5/11 22/11 22/25 23/9 34/19 36/13
mentioned [1]  30/24
mere [1]  20/13
merits [1]  3/11
metaphor [1]  3/19
might [10]  15/12 17/11 19/13 19/15 20/20 21/3 21/7 21/11 26/12 33/7
mind [1]  26/22
minute [3]  18/12 26/15 27/6
minutes [3]  4/1 21/15 33/23
mis [1]  6/1
misinformation [2]  30/19 31/20
missing [1]  27/23
Missouri [1]  9/24
misspoke [1]  18/1
mix [1]  3/19
moderation [5]  6/2 14/23 30/19 31/7 31/20
Moody [1]  15/21
more [2]  10/14 10/15
morning [5]  2/2 2/3 2/4 2/10 2/21

31/14
motion [1]  35/8
move [3]  9/1 14/3 26/14
Mr [1]  23/10
Mr. [10]  4/1 5/15 6/14 13/12 13/17 13/22 21/15 21/17 35/11 36/23
Mr. Ahmed [5]  6/14 13/12 13/17 13/22 35/11
Mr. Lindsey [5]  4/1 5/15 21/15 21/17 36/23
Ms [1]  13/12
Ms. [7]  3/25 4/2 13/13 13/16 13/22 30/23 33/23
Ms. Bellon [1]  13/16
Ms. DeCell [4]  3/25 4/2 30/23 33/23
Ms. Melford [2]  13/13 13/22
much [4]  2/18 21/14 33/22 36/22
multipart [1]  18/20
multiple [1]  3/18
Murthy [1]  9/24
my [7]  2/10 2/13 2/21 18/1 19/14 21/8 36/24

**N**

name [2]  2/10 2/22
narrow [1]  26/23
necessarily [1]  10/15
need [3]  15/19 16/16 17/20
needs [1]  33/10
neither [1]  19/8
nestor [5]  1/22 1/24 37/10 37/10 37/12
never [2]  25/25 29/25
new [5]  1/17 1/17 4/4 5/8 16/7
nexus [4]  30/8 30/13 30/14 31/23
no [20]  1/3 8/22 14/1 16/9 19/5 20/25 22/21 23/7 24/4 24/16 25/5 25/9 25/10 26/9 28/22 32/15 32/20 34/10 35/6 35/25
nobody [2]  29/17 29/18
Noem [1]  23/9
none [3]  16/6 29/3 36/4
nonetheless [1]  33/14
Northwest [2]  1/20 1/23
not [39]  3/12 4/14 7/14 8/5 10/12 10/15 10/22 13/24 14/18 15/14 16/21 16/25 17/7 18/22 19/13 19/17 19/21 19/25 23/14 24/15 25/1 25/16 25/19 25/22 26/11 26/17 29/18 30/17

31/14
32/11 32/12 33/1 33/5 33/6 33/17 34/13 36/9
note [2]  27/21 32/6
nothing [1]  30/20
noticing [1]  24/7
now [5]  11/19 24/3 29/21 32/18 32/18
numerous [1]  3/2
NW [1]  37/11

**O**

objectives [4]  23/11 23/14 24/1 24/8
obvious [1]  5/3
occurred [1]  25/7
off [1]  29/1
office [2]  1/19 26/4
officers [1]  5/24
Official [2]  1/22 37/11
Okay [20]  2/18 2/25 4/15 6/23 10/4 14/3 18/11 21/14 23/5 23/18 25/21 26/14 27/5 30/2 30/7 30/17 31/18 32/3 33/22 36/20
one [18]  3/17 5/18 6/14 8/21 13/9 13/9 16/1 21/7 22/19 23/16 24/4 25/17 27/18 29/5 29/24 32/17 32/18 36/8
one's [1]  11/9
only [2]  14/20 30/3
operation [1]  23/6
opinion [2]  14/19 14/20
opposed [2]  9/15 11/6
opposition [1]  29/1
ordering [1]  29/6
organization [8]  6/15 9/12 9/12 10/1 10/2 10/16 11/9 35/12
organization's [2]  4/10 13/17
organizational [9]  3/9 9/14 9/20 10/6 11/3 11/19 26/15 26/18 26/21
organizations [2]  4/9 12/21
other [16]  3/5 5/20 8/3 12/12 12/21 13/6 13/13 13/22 13/23 15/11 16/7 19/20 26/17 27/19 31/2 33/15
others [3]  4/14 15/21 20/21
ought [1]  29/23
our [10]  5/13 7/22 8/13 12/8 13/8 20/2 26/4 28/25 29/1 35/8
out [9]  7/2 7/3 8/23 8/24 24/3 27/23 29/23 32/8 36/24
outside [3]  7/15 12/1 12/4
over [1]  20/23
overbroad [1]  14/12

own [4]  10/7 13/3 21/8 35/9

**P**

part [5]  6/22 7/25 31/14 36/11 36/15
participation [1]  11/4
particular [1]  13/9
particularly [1]  18/17
parts [2]  17/12 17/14
past [1]  3/17
path [3]  9/8 9/23 17/24
payments [1]  29/7
people [27]  4/13 7/2 7/3 7/13 7/15 7/18 8/23 8/24 11/23 12/3 12/20 13/6 14/21 15/16 19/13 27/20 28/7 30/3 30/24 31/2 32/19 33/6 33/9 33/12 34/15 35/25 36/16
people's [1]  11/10
perhaps [2]  9/7 16/13
permanent [4]  6/13 7/20 12/6 15/11
permissibly [1]  16/25
personalized [1]  34/8
personally [1]  20/7
perspective [1]  19/16
PETA [1]  11/12
Peterson [1]  21/4
petition [1]  34/21
PI [1]  29/1
plainly [1]  15/25
plaintiff [5]  1/4 1/12 2/7 2/11 21/23
plaintiffs [3]  23/8 24/12 28/6
platform [1]  35/15
platforms [4]  14/23 29/6 29/7 35/14
play [1]  29/23
played [1]  27/22
please [3]  2/7 2/20 5/17
plenty [1]  10/10
point [5]  12/8 20/10 32/8 36/8 36/12
points [2]  29/24 33/25
policies [2]  8/17 34/21
policy [125]  3/6 3/7 4/5 4/21 5/8 5/18 5/19 6/8 6/11 6/19 6/22 6/24 7/1 7/5 7/7 7/8 7/10 7/11 7/13 7/23 8/1 8/3 8/6 8/7 8/12 8/14 8/21 8/21 10/22 10/23 10/24 11/15 11/16 12/3 12/6 14/9 14/11 15/7 15/10 15/15 15/21 15/25 16/20 17/9 17/12 17/12 17/15 17/17 18/8 18/25 19/3 19/6 19/15 20/2 20/8 20/12 21/19 21/19 21/20 21/24 22/1 22/2 22/4 22/5 22/19 22/21 22/22 22/25 23/1 23/1 23/4

23/11 23/12 23/14 23/17 23/24 23/25 24/1 24/3 24/5 24/13 24/14 24/19 24/20 25/6 25/9 25/11 25/22 25/24 26/6 26/10 27/1 27/11 28/16 28/25 29/3 29/20 29/24 29/25 30/4 30/20 31/9 31/16 31/16 31/17 32/4 32/9 32/10 32/11 32/17 32/19 32/25 33/3 33/5 33/5 33/8 33/12 34/4 34/10 34/15 35/21 35/21 36/14 36/15
policy-based [1]  33/3
position [1]  4/19
post [3]  5/5 16/8 22/9
pragmatic [2]  7/24 21/7
pre [1]  27/8
pre-enforcement [1]  27/8
precedes [1]  36/13
preliminarily [1]  18/7
preliminary [2]  1/9 18/6
preposterous [3]  25/9 25/21 25/22
press [2]  22/12 31/13
pretty [1]  31/9
prevail [1]  17/18
prevails [1]  3/14
prevented [1]  10/2
previously [1]  13/14
private [7]  14/13 16/21 17/13 19/13 29/24 30/1 30/5
probably [1]  3/19
procedure [1]  19/16
procedures [1]  22/23
proceed [1]  25/6
proceeding [3]  26/5 31/15 32/25
proceedings [5]  2/1 17/6 25/13 25/16 37/6
process [1]  9/18
professional [2]  12/16 13/24
programmatic [1]  11/16
prohibit [2]  20/3 20/11
promulgated [1]  25/10
propaganda [1]  13/20
Prosperity [2]  10/16 16/14
protected [7]  7/19 8/25 16/24 17/14 20/5 21/10 27/8
protection [1]  34/8
provided [1]  22/5
provision [2]  34/6 34/7
provisions [4]  20/2 20/10 20/12 34/5
public [5]  5/10 7/22 13/2 36/15 36/17
punish [1]  16/25
punishment [2]  10/25 20/22
purely [1]  15/8

**P**

purportedly [3] 19/6 20/1 20/13
purposes [1] 11/2
pursue [1] 6/3
pursued [1] 4/21
put [2] 21/11 36/6

**Q**

question [9] 4/16 5/3 18/2 18/20 21/6 21/7 28/14 32/6 33/13
questioning [1] 24/4
quickly [1] 5/2
quite [6] 3/1 4/6 15/2 16/6 16/20 31/8
quote [2] 6/5 35/13
quoted [1] 16/7

**R**

rationale [1] 32/2
rationales [1] 36/10
Raya [2] 1/14 2/14
reaches [1] 6/24
reaching [1] 19/3
read [2] 8/16 24/7
reading [2] 21/18 21/19
ready [2] 4/13 21/17
reaffirmed [1] 9/24
really [3] 3/2 3/18 23/3
reason [2] 27/10 34/11
reasonably [1] 19/9
reasoned [1] 19/8
reasons [3] 28/17 31/11 31/13
rebut [1] 33/23
rebuttal [1] 4/2
recently [1] 9/24
record [4] 2/8 14/1 23/8 27/21
records [1] 31/11
red [4] 24/20 24/23 32/19 32/23
red-headed [1] 32/19
refer [1] 24/4
reference [4] 14/10 23/23 23/25 34/6
referenced [3] 7/12 11/13 34/18
referred [1] 6/21
referring [1] 6/18
reflected [2] 35/20 35/22
regard [1] 33/12
regime [2] 29/16 30/16
regimes [1] 28/9
regular [1] 14/1
regulate [1] 35/5
rejiggering [1] 15/4
relate [1] 5/20
related [3] 7/22 22/14 22/14
relationship [3] 30/15 31/4 35/18
release [1] 22/13
releases [1] 31/13
relevant [2] 7/24 31/16
relief [12] 3/13 8/5 8/8

17/24 18/3 18/6 18/9 26/24 27/2
rely [1] 31/14
remedies [2] 26/16 26/19
remedy [1] 3/22
removability [1] 22/3
removal [4] 25/13 26/5 26/8 32/24
remove [1] 23/22
renewed [1] 7/14
reply [1] 13/8
report [1] 35/13
reported [2] 1/22 14/21
reportedly [2] 7/12 19/1
reporter [4] 1/22 27/25 29/10 37/11
reporting [7] 13/18 14/16 14/22 16/4 16/7 16/8 35/14
reports [1] 34/20
represent [1] 2/11
represented [1] 31/17
representing [2] 2/22 2/24
represents [1] 36/1
require [4] 15/21 34/2 34/11 34/13
required [1] 30/13
requires [1] 34/8
research [6] 1/3 2/6 2/12 14/16 14/22 27/8
researched [1] 14/21
researchers [1] 13/15
residents [4] 6/13 7/20 12/6 15/11
resolved [1] 3/6
Resource [1] 9/10
resources [1] 11/18
respect [9] 4/24 6/12 6/17 9/22 21/5 34/1 34/2 34/14 35/11
respecting [1] 12/1
restricted [1] 7/10
restriction [3] 4/25 5/8 36/14
rests [4] 11/3 12/22 20/1 20/13
result [4] 7/17 11/17 13/3 33/14
resulted [1] 19/4
resulting [1] 11/15
results [2] 3/4 33/14
reverse [1] 4/14
revocation [4] 22/3 24/9 27/1 33/9
ridiculous [1] 25/24
right [34] 3/20 9/17 9/21 10/7 11/9 12/22 12/24 14/4 15/9 16/11 17/23 19/11 20/24 20/25 22/11 22/15 25/8 25/15 25/18 26/2 27/2 27/4 28/3 28/12 29/14 29/21 30/15 30/21 31/22 31/25 33/13 33/18 34/21

risk [1] 31/7
Riverside [1] 1/16
RMR [2] 1/22 37/10
rounded [1] 21/11
RUBIO [8] 1/6 2/6 4/24 6/11 6/16 22/12 23/9 23/15
Rubio's [1] 23/21
Rubio-Noem [1] 23/9
running [1] 24/25
runs [2] 8/19 19/25

**S**

safety [1] 6/2
said [6] 12/10 24/19 28/17 30/2 32/19 36/14
same [9] 6/19 7/25 8/11 11/7 12/20 22/7 23/11 23/13 34/5
Sampat [2] 1/18 2/23
sanctioned [2] 27/17 31/5
say [11] 3/1 16/13 23/9 23/13 24/19 25/5 31/14 31/19 32/17 35/3 35/12
saying [8] 25/4 25/23 25/25 26/18 29/12 29/18 31/19 32/20
says [3] 5/7 32/17 35/16
scenario [1] 32/12
scope [6] 15/7 15/10 26/23 28/25 31/10 31/17
scrutinize [1] 5/25
second [3] 3/8 29/6 34/14
secretary [15] 4/24 5/5 5/9 6/11 6/16 20/6 22/11 24/10 32/9 32/13 33/1 33/2 33/10 34/9 36/15
secretary's [2] 22/2 33/2
see [4] 3/5 35/19 35/25 36/7
seek [4] 11/21 17/20 18/9 26/16
seeking [6] 8/13 9/17 9/18 9/19 18/6 20/4
seeks [1] 19/6
seems [3] 16/23 19/7 36/11
seen [3] 7/9 14/2 16/1
self [1] 10/23
self-executing [1] 10/23
sense [1] 16/22
sent [1] 5/24
separate [5] 8/15 18/23 22/4 22/23 25/1
separately [3] 3/21 24/18 24/22
serve [1] 20/8
shall [1] 32/20
she [1] 13/20
shifting [1] 24/24

should [2] 3/22 27/22 36/15
shouldn't [1] 17/5
show [1] 9/20
side [3] 6/25 7/6 27/18
significant [1] 11/17
similarly [2] 12/23 13/7
simple [1] 19/24
simply [5] 14/19 23/25 24/7 32/11 33/11
since [3] 6/21 10/4 24/24
single [1] 6/18
sir [1] 22/14
situated [2] 12/23 13/7
skip [1] 10/5
slippery [1] 13/6
small [1] 20/6
so [85] 3/16 3/20 3/25 4/3 4/12 4/15 4/16 4/18 5/5 6/7 6/9 7/1 7/17 8/3 9/5 9/14 11/15 12/15 12/22 13/14 13/22 14/6 14/8 15/5 15/23 15/24 16/24 17/2 17/4 17/24 18/6 18/8 18/13 18/16 18/24 19/7 19/15 20/1 20/11 20/13 21/3 22/4 22/12 22/19 22/19 22/25 23/18 24/9 24/16 24/17 24/19 24/24 25/4 25/4 25/9 26/5 26/9 27/4 27/14 27/15 27/16 28/10 28/14 29/12 29/17 29/17 30/5 30/7 30/13 30/17 30/22 31/9 31/14 31/18 31/25 32/3 32/3 32/10 33/4 34/1 34/10 35/1 35/13 35/15 35/21
social [5] 4/6 14/17 14/20 14/23 15/4
some [13] 3/16 13/23 16/17 16/18 17/10 28/7 29/15 30/14 30/15 31/3 32/12 32/14 34/11
somebody [1] 30/17
somehow [2] 34/3 34/16
someone [2] 24/23 33/19
something [2] 16/25 29/23
somewhere [1] 32/12
sorry [3] 18/1 18/20 19/19
sort [4] 9/18 26/23 30/14 30/15
speaker [1] 10/2
speaking [1] 10/2
specific [12] 6/7 6/12 10/1 12/11 12/16 15/14 17/4 17/8 20/18 28/18 33/6 33/8
specifically [5] 7/6 9/25 12/10 14/15 36/14

speculation [1] 31/13
speech [19] 4/5 6/5 14/19 15/4 16/3 16/24 21/21 23/3 27/13 28/24 29/4 31/22 32/14 33/20 34/20 34/23 35/4 35/5 36/19
standard [1] 11/12
standing [33] 3/8 3/10 3/10 3/14 3/23 9/1 9/4 9/6 9/8 9/13 9/14 9/19 9/21 9/23 9/25 10/3 10/6 10/7 10/10 11/2 11/3 11/19 11/21 12/14 24/15 24/17 26/14 26/15 26/18 26/21 27/6 28/15 32/17
standpoint [2] 7/25 19/7
start [3] 4/15 14/4 22/15
starters [1] 16/2
starting [1] 3/6
state [5] 20/7 21/4 22/13 32/9 34/9
statements [2] 7/22 13/2
states [18] 1/1 1/10 1/19 2/22 6/6 6/14 7/14 7/15 11/25 12/1 12/4 12/7 15/11 16/4 16/9 16/10 20/5 20/9
statute [3] 23/16 23/22 32/9
statutes [2] 20/1 34/2
statutory [2] 20/13 34/5
stay [1] 18/6
step [2] 9/18 32/5
still [5] 7/17 17/3 26/7 31/4 33/10
stood [1] 4/12
straightforward [2] 9/8 27/10
Street [1] 1/20
strongest [2] 9/3 9/5
studied [1] 6/1
study [1] 13/19
subject [6] 15/12 20/20 29/3 29/25 30/4 33/9
subjecting [1] 13/12
subjects [1] 15/16
submitted [1] 4/23
substance [1] 14/3
substantially [1] 14/12
substantiated [1] 16/17
succeed [1] 18/2
success [1] 17/21
such [7] 17/11 25/6 25/17 26/10 30/25 32/21 32/21
suffered [1] 12/16
suffers [1] 9/12
suffice [1] 11/1
suffices [1] 10/3
sufficient [1] 9/13
suggested [1] 14/18
suggests [2] 7/24 15/24

**S**

suit [2]  25/1 25/17
Suite [1]  1/16
support [9]  4/23 7/22 14/1 14/21 18/5 18/10 19/17 19/25 35/8
supports [2]  14/22 21/13
suppose [1]  8/18
suppress [2]  33/20 35/3
suppression [1]  23/2
Supreme [4]  9/9 15/2 16/15 33/16
sure [10]  2/21 5/4 16/17 22/6 22/8 26/3 26/11 30/23 32/7 33/1
surrounding [1]  13/1
survive [1]  17/11
sweep [2]  15/25 17/10
swirling [1]  3/18
sword [1]  33/17

**T**

table [2]  2/13 2/23
take [1]  3/21
taken [1]  6/10
talk [4]  3/22 23/1 24/17 27/5
talked [2]  18/18 33/16
talking [7]  3/9 3/17 5/11 21/15 22/7 22/9 23/3
talks [1]  5/7
tammy [5]  1/22 1/24 37/10 37/10 37/12
targeted [8]  4/13 21/20 27/20 28/7 28/23 29/3 31/23 36/1
targeting [1]  34/15
targets [1]  14/15
tech [2]  29/6 29/7
TECHNOLOGY [3]  1/3 2/5 2/12
tell [3]  4/19 9/5 30/23
terms [3]  13/21 20/16 35/15
than [3]  10/14 10/15 23/16
thank [12]  2/9 4/3 14/8 18/24 21/14 21/16 28/4 33/22 33/24 36/21 36/22 36/23
Thanks [1]  2/18
that [200]  3/2 3/6 3/13 3/17 4/5 4/6 4/12 4/19 5/1 5/11 5/11 5/18 5/20 5/23 5/25 6/4 6/24 6/24 7/5 7/11 7/12 7/13 7/13 7/17 7/18 7/23 7/24 7/24 7/25 8/1 8/2 8/8 8/10 8/11 8/19 8/20 8/21 9/10 9/12 9/12 9/25 10/2 10/3 10/6 10/16 10/17 10/20 10/22 10/23 11/1 11/5 11/7 11/12 11/14 11/18 11/21 12/2 12/8 12/10 13/5 13/7 13/10 13/11 13/15 13/22 13/24 13/25 14/10 14/18 14/20 14/24 14/25 15/1 15/2 15/10 15/16 15/17 15/23 15/24 16/4 16/7 16/8 16/11 16/14 16/15 16/17 16/24 17/11 17/12 17/20 17/22 17/25 18/3 18/8 18/9 18/10 18/17 19/1 19/4 19/5 19/5 19/8 19/17 19/23 19/24 20/6 20/7 20/14 20/19 20/22 21/1 21/10 21/12 21/19 21/21 21/23 21/25 22/6 22/9 22/10 22/11 23/5 23/9 23/13 23/14 23/18 24/4 24/6 24/8 24/8 24/10 24/19 24/20 25/5 25/10 25/11 26/6 26/15 26/16 26/17 27/2 27/11 27/11 27/12 27/20 27/21 27/24 28/7 28/19 28/20 28/23 29/12 29/18 29/23 29/24 30/2 30/3 30/3 30/5 30/23 30/25 31/14 31/19 32/1 32/1 32/8 32/19 32/21 32/21 32/24 32/25 33/12 33/14 33/17 33/17 33/21 33/21 33/25 34/1 34/3 34/7 34/8 34/12 34/17 34/19 35/1 35/12 35/20 35/25 35/25 36/1 36/4 36/7 36/13 36/14 36/16 37/5
that's [38]  5/13 7/7 7/21 8/12 12/19 13/3 14/13 15/2 15/9 16/25 17/24 19/11 19/21 19/21 20/22 21/12 22/10 23/2 23/7 25/4 25/8 25/18 25/20 28/10 28/12 29/14 29/17 29/21 29/22 30/13 30/21 31/8 31/22 31/23 32/2 35/6 35/15 35/19
their [19]  12/16 12/17 12/18 13/3 14/14 14/16 17/13 25/12 26/23 26/24 27/8 27/21 28/8 28/15 29/24 32/2 34/21 35/15 36/10
them [8]  4/9 5/24 12/15 15/8 26/16 27/3 27/15 31/5
themselves [1]  2/19
then [26]  3/11 3/13 3/25 6/3 8/5 8/8 8/16 9/19 10/3 11/1 15/5 15/6 15/19 23/18
13/5 13/7 13/10 13/11 13/15 13/22 13/24 13/25 14/10 14/18 14/20 14/24 14/25 15/1 15/2 15/10 15/16 15/17 15/23 15/24 16/4 16/7 16/8 16/11 16/14 16/15 16/17 16/24 17/11 17/12 17/20 17/22 17/25 18/3 18/8 18/9 18/10 18/17 19/1 19/4 19/5 19/5 19/8 19/17 19/23 19/24 20/6 20/7 20/14 20/19 20/22 21/1 21/10 21/12 21/19 21/21 21/23 21/25 22/6 22/9 22/10 22/11 23/5 23/9 23/13 23/14 23/18 24/4 24/6 24/8 24/8 24/10 24/19 24/20 25/5 25/10 25/11 26/6 26/15 26/16 26/17 27/2 27/11 27/11 27/12 27/20 27/21 27/24 28/7 28/19 28/20 28/23 29/12 29/18 29/23 29/24 30/2 30/3 30/3 30/5 30/23 30/25 31/14 31/19 32/1 32/1 32/8 32/19 32/21 32/21 32/24 32/25 33/12 33/14 33/17 33/17 33/21 33/21 33/25 34/1 34/3 34/7 34/8 34/12 34/17 34/19 35/1 35/12 35/20 35/25 35/25 36/1 36/4 36/7 36/13 36/14 36/16 37/5

theory [3]  9/3 11/20 20/25
there [23]  3/2 3/16 6/23 7/5 8/1 8/8 12/8 16/7 16/9 16/18 17/2 19/5 19/20 20/6 22/21 25/5 25/10 27/25 29/10 29/25 32/16 32/16 32/20
there's [7]  8/6 8/6 10/10 15/25 21/23 32/12 34/10
these [9]  3/18 15/17 20/20 21/1 24/8 24/10 35/10 35/20 35/25
they [34]  6/4 12/3 12/10 12/25 13/7 15/6 19/2 19/17 23/23 23/25 24/13 24/15 25/7 26/16 26/21 26/24 27/7 27/11 27/11 27/12 27/12 27/24 28/4 28/19 31/19 31/21 31/24 33/3 34/20 34/20 35/9 35/11 35/14 36/17
they're [1]  16/17
thing [1]  22/7
think [45]  3/8 5/3 7/5 7/8 8/19 9/3 9/5 9/7 9/22 10/16 10/19 16/12 17/19 17/24 21/3 22/16 22/18 22/19 23/7 24/8 24/12 24/15 25/1 25/12 25/18 25/21 25/24 26/12 26/24 27/10 27/22 28/1 28/6 29/2 29/21 29/24 31/9 31/12 31/16 32/24 33/4 33/7 33/7 33/20 36/8
third [2]  26/7 29/7
this [52]  2/12 3/1 4/16 5/3 8/21 8/24 9/8 9/14 10/22 11/14 11/20 12/2 12/3 13/6 13/8 14/6 15/8 15/15 15/25 16/19 18/3 18/5 19/6 19/7 19/15 19/18 19/19 20/11 20/21 20/24 20/25 21/6 21/9 22/16 23/1 24/2 25/17 28/20 29/3 29/4 29/20 29/25 30/20 31/15 31/15 33/7 33/11 34/1 35/21 36/11 36/16 36/19
those [26]  5/20 5/23 6/13 6/14 6/16 13/2 16/6 17/5 17/14 17/16 18/23 20/10 21/21 21/22 22/1 22/4 25/3 25/16 27/19 27/22 27/23 30/24 31/2
thought [1]  30/2
threat [8]  10/24 10/25 20/22 27/7 29/5 33/16 33/16 33/21
threatened [2]  12/19 32/1
through [12]  4/22 6/10 8/22 9/9 9/23 14/9 16/20 17/5 22/20 25/13 26/7 32/24
thrown [1]  11/14
tighter [1]  14/22
time [3]  10/5 19/2 24/22
Times [1]  16/7
today [6]  2/4 2/13 2/16 4/4 5/8 21/19
too [1]  13/6
took [2]  5/21 19/17
top [1]  14/25
total [1]  26/24
toward [2]  21/20 28/23
transcription [1]  37/6
treat [1]  15/7
tried [1]  24/23
tries [1]  14/25
trust [1]  6/2
try [2]  3/21 16/23
trying [1]  34/23
turmoil [1]  11/14
turn [1]  5/16
two [7]  4/9 5/20 6/13 8/17 9/18 27/24 28/2
two-step [1]  9/18
types [1]  25/3

**U**

ultimately [1]  21/12
unconnected [1]  8/3
unconstitutional [1]  15/20
under [19]  11/20 17/25 18/2 18/6 23/16 23/22 25/2 27/11 29/19 30/3 32/1 32/1 32/8 32/22 33/2 33/4 33/5 34/4 35/21
undersecretary [1]  5/10
understand [3]  16/4 19/3 32/15
understanding [3]  5/13 19/14 34/17
understood [2]  7/12 7/13
unified [5]  3/7 4/16 4/19 22/16 22/18
UNITED [17]  1/1 1/10 1/19 2/22 6/5 6/13 7/14 7/15 11/25 12/1 12/4 12/7 15/11 16/3 16/10 20/5 20/9
University [1]  1/15
unless [1]  24/5
untangled [1]  3/12
unwillingness [1]  11/10
up [2]  21/11 33/8
urge [1]  35/7
us [3]  2/16 2/24 31/12

thought [1]  30/2

32/13

**V**

versus [2]  2/6 21/4
very [9]  2/18 9/25 11/16 12/16 16/15 16/15 21/14 33/22 36/22
vetting [1]  22/23
via [5]  9/18 9/19 11/21 17/20 31/5
view [3]  7/1 17/9 17/15
viewed [1]  12/25
viewpoint [5]  14/24 19/10 28/20 29/4 31/18
viewpoints [1]  14/16
violation [5]  8/7 8/7 18/13 18/14 19/22
violative [1]  19/21
visa [12]  4/25 5/8 5/25 6/4 7/10 12/4 22/3 24/9 26/25 33/9 33/10 36/13
visas [2]  7/14 7/15
von [2]  12/24 27/17

**W**

waive [1]  10/12
want [10]  5/2 5/3 10/4 18/3 18/11 18/23 22/6 31/20 32/8 33/25
warfare [1]  13/21
warned [1]  4/12
was [24]  7/7 8/1 11/7 13/11 13/16 13/17 16/14 16/15 18/2 19/1 19/5 19/8 20/10 23/10 23/17 25/10 26/6 26/6 26/12 27/16 27/16 27/25 29/10 36/4
Washington [5]  1/5 1/20 1/23 16/8 37/12
way [3]  11/7 16/17 21/1
ways [4]  3/3 8/20 11/17 12/12
we [56]  2/4 3/9 3/25 4/3 5/11 5/18 7/1 7/7 7/8 7/9 8/13 10/9 10/15 10/16 10/19 11/23 12/8 12/18 13/9 14/1 14/4 14/8 14/10 14/11 15/14 15/15 15/19 16/1 16/1 16/4 17/7 17/11 17/14 18/4 18/4 18/5 18/9 18/9 18/17 18/24 18/25 19/3 20/2 22/18 23/1 23/3 24/3 24/8 24/17 24/24 24/25 26/12 31/11 31/12 32/2 35/8
we'll [1]  30/22
we're [3]  17/8 22/6 24/19
website [1]  22/13
Welcome [1]  2/25
well [11]  7/23 10/11 12/6 12/17 13/13 18/5

well... [5]  19/8 22/21 24/9 26/4 26/21
well-equipped [1]  26/4
well-reasoned [1]  19/8
went [1]  24/22
were [13]  6/4 6/13 8/2 8/11 9/17 9/18 13/23 16/8 16/9 16/18 27/17 35/20 36/1
what [37]  3/1 3/6 3/14 3/14 3/20 6/7 7/4 7/8 8/4 8/5 8/14 9/3 9/5 13/20 15/6 16/1 16/23 16/24 18/13 18/16 19/3 19/14 20/4 20/11 20/17 21/7 23/18 25/4 26/11 26/23 28/6 30/7 30/9 34/17 35/17 35/19 36/6
what's [4]  27/14 27/17 27/23 31/16
whatever [2]  14/20 31/23
when [7]  5/16 5/16 15/3 21/15 23/1 25/7 36/12
whenever [1]  21/17
where [9]  3/18 7/21 9/24 13/8 30/1 32/12 33/12 35/6 35/8
whether [6]  3/7 3/9 4/16 4/18 8/22 11/25
which [18]  3/3 8/4 9/4 9/10 16/9 20/1 20/13 21/19 22/5 23/8 25/1 26/6 28/25 29/2 31/17 35/9 35/14 36/18
who [20]  2/23 7/14 7/18 10/2 11/9 11/24 12/3 12/4 12/5 12/9 14/19 14/21 15/12 16/21 19/13 27/15 29/18 30/17 30/18 34/15
who's [1]  29/18
whole [2]  14/13 20/10
whom [1]  3/10
whose [1]  14/22
why [11]  4/19 7/7 10/5 10/13 11/5 19/11 22/16 23/23 24/4 27/7 32/3
will [13]  2/19 3/1 3/25 4/1 4/1 5/2 14/4 21/14 24/17 27/21 30/23 33/23 36/24
willing [1]  4/13
within [1]  8/13
without [1]  10/7
Women's [1]  9/9
won't [1]  35/3
words [7]  3/5 8/3 13/6 19/20 26/17 31/2 33/15
work [7]  6/2 13/3 13/10 13/11 13/17 21/21 36/25
working [5]  27/12 30/6

worry [1]  26/19
worrying [1]  10/7
worthy [1]  29/2
would [40]  3/20 7/4 7/13 7/17 9/14 9/19 9/20 10/6 11/20 12/5 12/8 12/13 16/13 17/12 17/14 18/5 18/10 20/4 20/8 22/1 22/13 22/14 23/5 24/21 25/4 25/5 25/6 25/13 25/15 27/2 28/20 30/14 30/25 32/24 32/25 33/13 33/21 33/25 35/6 36/4
wouldn't [2]  28/22 31/14
woven [1]  3/22
writing [1]  34/20

Y

yeah [5]  6/9 15/24 22/12 22/13 28/12
year [2]  4/21 4/23
yes [22]  4/20 5/6 5/14 9/2 9/16 10/9 12/15 12/25 14/5 15/22 18/4 18/8 18/19 18/24 19/12 19/12 22/14 24/3 26/20 27/1 33/21 34/25
yield [1]  3/3
York [3]  1/17 1/17 16/7
you [107]  2/9 3/18 3/25 4/1 4/3 5/1 5/15 5/15 5/16 7/5 8/5 8/5 8/8 8/10 9/3 9/4 9/5 9/17 9/18 9/19 9/20 10/12 10/13 10/14 10/17 11/20 11/20 11/21 12/13 13/5 14/8 15/6 15/7 16/11 16/11 17/3 17/9 17/10 17/15 17/18 17/19 17/19 17/20 17/20 17/24 18/2 18/3 18/3 18/11 18/14 18/15 18/23 18/24 20/16 20/19 20/20 20/23 20/25 21/1 21/7 21/14 21/15 21/16 22/9 22/16 22/19 23/5 24/6 24/8 24/12 24/19 24/21 25/4 25/5 25/6 25/15 25/16 25/24 26/5 26/15 26/17 28/4 28/10 28/17 28/19 28/20 28/25 29/18 30/2 30/3 30/25 31/4 31/19 32/13 32/20 33/13 33/15 33/22 33/23 33/24 34/22 35/1 35/7 36/4 36/21 36/22 36/23
you're [4]  21/17 24/5 28/15 29/12
You've [1]  11/13
your [57]  2/10 2/21 4/3 4/18 4/20 5/6 5/13

9/3 9/5 9/7 9/16 9/22 10/5 10/9 10/15 11/8 11/23 12/15 12/22 13/8 14/2 14/8 15/9 15/22 16/13 17/7 18/4 18/19 19/12 19/18 20/24 21/16 21/18 23/7 25/8 25/18 26/11 26/20 28/22 29/14 29/21 30/21 31/1 31/6 31/8 32/5 32/23 33/24 35/6 36/7 36/9 36/21
yourself [1]  2/8

Z

Zach [1]  2/22
Zachariah [1]  1/18